**UNITED STATES of America,
Appellant–Cross–Appellee,**

v.

**Joseph J. SANTOPIETRO; Paul R. Vitarelli, Appellants,**

**Perry A. Pisciotti, Appellee.**

**Docket Nos. 97–1373L, 97–1571CON, 97–2410CON and 97–2449CON.**

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1998.

Decided Jan. 22, 1999.

Stephen V. Manning, Asst. U.S. Atty., New Haven, Conn. (John H. Durham, U.S. Atty., Leonard C. Boyle, Thomas J. Murphy, Asst. U.S. Attys., New Haven, Conn., on the brief), for appellant-cross-appellee.

John L. Pollack, Hoffman Pollok & Pickholz, New York, NY (Eileen McGann, West Redding, Conn., on the brief), for appellant Santopietro.

Sara C. Schnell, Asst. Fed. Pub. Defender, New Haven, Conn. (Thomas C. Dennis, Fed. Pub. Defender, New Haven, Conn., on the brief), for appellant Vitarelli.

Andrew A. Feinstein, Simsbury, Conn., for appellee Pisciotti.

Before: NEWMAN, CARDAMONE and PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

These consolidated appeals and cross-appeal primarily concern the interpretation of 18 U.S.C. § 666 (1994 & Supp. II 1996) and the continued validity of this Court's decision in *United States v. Foley*, 73 F.3d 484 (2d Cir.1996), in light of the Supreme Court's subsequent decision in *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Section 666(a)(1)(B), (b), set out in full in the margin,[1] punishes receipt of corrupt payments by any person who "corruptly solicits or demands" money "intending to be influenced or rewarded in connection with any ... transaction" of an "organization, government, or agency involving anything of value of $5,000 or more" if the "organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program...." 18 U.S.C. § 666(a)(1)(B), (b). The precise issue is whether the $5,000 or more required to be involved in the transaction must be worth at least that amount *to a recipient of federal funds*, as *Foley* held, *see* 73 F.3d at 492–93, or whether, in light of *Salinas*, it is sufficient if the transaction is worth $5,000 or more to any person or entity, and bears some relationship to a federally funded program, *see* 522 U.S. at 52, 118 S.Ct. at 473–75.

This issue arises on an appeal by the United States from the revised sentence imposed by the District Court for the District of Connecticut (Gerard L. Goettel, District Judge), on Perry Pisciotti on May 22, 1998, and a cross-appeal by the United States from the revised sentence the District Court imposed on Joseph J. Santopietro on May 30, 1998. These sentences were imposed after the District Court, on remand from this Court in light of *Foley*, vacated the convictions of both defendants and those of appellant Paul R. Vitarelli on section–666–related counts. Santopietro and Vitarelli also appeal from their revised sentences, raising various challenges. The Government has not cross-appealed as to Vitarelli, who had served his original sentence by the time the District Court vacated his convictions on these counts. *See Santopietro v. United States*, 948 F.Supp. 145, 148 (D.Conn.1996) ("*Santopietro II* ").

On the defendants' appeals we affirm; on the Government's cross-appeal, we reverse and remand for reinstatement of the section 666 convictions and for further resentencing.

---

1. **§ 666. Theft or bribery concerning programs receiving Federal funds**

    (a) Whoever, if the circumstance described in subsection (b) of this section exists—
      (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
      ....
      (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organiza-tion, government, or agency involving anything of value of $5,000 or more....
    ....
shall be fined under this title, imprisoned not more than ten years, or both.
    (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance....
18 U.S.C. § 666(a)(1)(B), (b) (1994 & Supp. II 1996).

## Background

The essential facts of the defendants' crimes are set forth in our 1993 opinion affirming their convictions on direct appeal. *See United States v. Santopietro,* 996 F.2d 17 (2d Cir.1993) ("*Santopietro I*"). In brief, Santopietro, the former Mayor of Waterbury, Connecticut, Pisciotti, the former Republican Town Chairman of Waterbury, and Vitarelli, the former President of the Waterbury Board of Aldermen, were convicted of substantive and conspiracy offenses involving the receipt of corrupt payments, in violation of section 666(a)(1)(B), and tax offenses, among other crimes. Their corrupt payment convictions arose out of a scheme whereby Santopietro "use[d] his political position to influence decisions by various city agencies in return for bank loans and cash payoffs from certain local businessmen," and, "[i]n return, Santopietro and other members of his administration received hundreds of thousands of dollars disguised as loans, sales of options, real estate contract cancellations, and property leases." *Id.* at 18. Although large amounts of money flowed to individuals through corrupt means, there was no obvious or direct financial loss to the City of Waterbury itself.

After the affirmance in *Santopietro I*, this Court considered the appeal of Richard Foley, a former member of the Connecticut General Assembly, who was convicted of violating section 666(a)(1)(B) by soliciting and accepting monthly compensation of $2,500 as a "consultant" in exchange for his agreement to try to persuade state legislators to support a one-year exemption delaying the effective date of a bank divestiture requirement imposed by Connecticut law. The exemption was sought by Fleet Bank, from which the two individuals who agreed to "retain" Foley as a "consultant" were seeking a $12,500,000 loan. Ultimately, the exemption sought by Fleet Bank was enacted by the legislature, and Foley received a total of $25,000 for which he rendered no services, other than aiding passage of the delaying legislation. *See Foley,* 73 F.3d at 486.

On Foley's appeal, this Court reversed his convictions on the section 666(a)(1)(B) counts on the ground that the entity receiving the benefit valued in excess of $5,000, Fleet Bank, was not a recipient of any federal funds. *See id.* at 492–93. The Court acknowledged that the State of Connecticut, during the relevant period, received federal funds well in excess of the $10,000 statutory threshold of section 666(b), but ruled that the evidence was deficient in failing to establish that the exemption legislation had any financial value *to the State,* or that the exemption legislation had any connection with a federal program. *See id.* In effect, the Court ruled, in general, that the corruption penalized by section 666(a)(1)(B) must be "shown in some way to touch upon federal funds" and, in particular, that the organization, government, or agency whose transaction involves $5,000 or more and which the recipient of the corrupt payments endeavors to influence must itself be the recipient of at least $10,000 of federal funds. *See id.* at 493. Judge Lumbard dissented. *See id.* at 494.

After the *Foley* decision, Santopietro, Pisciotti, and Vitarelli moved, pursuant to 28 U.S.C. § 2255 (1994), to vacate all of their convictions, including those based on section 666(a)(1)(B). Judge Goettel agreed that *Foley* required him to vacate their convictions on the substantive and conspiracy counts charging acceptance of corrupt payments, but denied relief as to all other counts. *See Santopietro II,* 948 F.Supp. at 155. He noted that the jury had been instructed that the element of the statute requiring proof of "anything of value" of $5,000 or more was stated to be " 'any item . . . that the recipient or the giver considers to be worth something' " and that "[n]o reference was made to a loss by the government." *Id.* at 150 (quoting jury charge). Accordingly, he resentenced Santopietro to a total sentence of 90 months and Vitarelli to six months, with both defendants receiving credit for time served. Pisciotti was resentenced to time served.

Santopietro appeals to challenge the revised sentence calculations, and Vitarelli appeals to seek a new trial on the one remaining count on which he stands convicted, Count 24 charging the filing of a false tax return, in violation of 26 U.S.C. § 7206(1) (1994). The Government appeals as to Pisciotti and cross-appeals as to Santopietro

(but not Vitarelli) to seek reinstatement of their convictions relating to acceptance of corrupt payments.

### Discussion

### I.  The Government's Cross–Appeal

We consider first the Government's cross-appeal, which contends that *Foley* should be reconsidered in light of the Supreme Court's decision in *Salinas* and that the conspiracy and substantive counts relating to acceptance of corrupt payments should be reinstated.

*Salinas* concerned a county deputy sheriff who was convicted under section 666(a)(1)(B) for accepting bribes from a state prisoner in exchange for facilitating conjugal visits for the prisoner with the prisoner's wife and girlfriend.  The bribes consisted of a pick-up truck and two watches.[2]  The conjugal visits occurred at a jail run by Hidalgo County, Texas.  The County had contracted with the United States to house federal prisoners.  The federal government made a substantial grant to the county to repair the jail, and paid a specified amount per day for each federal prisoner housed.  These payments were far in excess of the $10,000 threshold of section 666(b).  *See* 522 U.S. at ——, 118 S.Ct. at 472.

In the Court of Appeals, Salinas contended, among other things, that his "transaction" did not involve "anything of value of $5,000 or more," as required by section 666(a)(1)(B).  The Fifth Circuit rejected that contention, concluding that "anything of value" included items of intangible value.  *See United States v. Marmolejo*, 89 F.3d 1185, 1191 (5th Cir.1996).  The Court of Appeals also ruled that the visits had a value in excess of $5,000.  *See id.* at 1194.  In rejecting Salinas's contention, the Fifth Circuit, relying on its prior decision in *United States v. Westmoreland*, 841 F.2d 572, 576 (5th Cir. 1988), noted that the $5,000 anything-of-value element of the statute did not require either that a federally funded transaction itself involve $5,000 or that the affected transaction involve $5,000 of federal funds.  *See Marmo-*

*lejo*, 89 F.3d at 1193.  The Fifth Circuit explicitly contrasted its own position, expressed in *Westmoreland*, that the statute does not require any relation between the $5,000 thing of value and the federal funds received by the local agency, with our statement in *Foley* that the " 'value must be connected, even if only indirectly, to the integrity of federal program funds.' "  *Id.* at 1193 n. 10 (quoting *Foley*, 73 F.3d at 490).

In the Supreme Court, Salinas contended that the "Government must prove the bribe in some way affected federal funds."  *Salinas*, 522 U.S. at ——, 118 S.Ct. at 473.  The Court rejected this contention: "The enactment's expansive, unqualified language, both as to bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate § 666(a)(1)(B). . . .  The prohibition is not confined to a business or transaction which affects federal funds."  *Id.*  However, the Court noted that it "need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was *related* to the housing of a prisoner in facilities paid for in significant part by federal funds themselves."  *Id.* at ——, 118 S.Ct. at 474 (emphasis added).

The Court then rejected Salinas's contention that the statute was unconstitutional as applied to him, observing that "[t]he preferential treatment accorded to [the state prisoner] was a threat to the integrity and proper operation of the federal program."  *Id.* at ——, 118 S.Ct. at 475.  The Court declined to consider, as beyond the scope of the grant of certiorari, whether the statute covered intangible benefits and whether the conjugal visits exceeded $5,000 in value.  *See id.*

It is clear that the Supreme Court's decision in *Salinas* has somewhat eroded *Foley*, but the precise extent of the erosion is less certain.  We believe that to whatever extent *Foley* required that the bribe directly affect the disbursement or other use of federal funds, such a construction of the statute must now be discarded.  Equally to be cast aside

---

**2.**  Salinas's co-defendant, the county sheriff, received a monthly payment of $6,000 plus $1,000 for each conjugal visit, which occurred twice a

week.  The sheriff did not challenge his conviction in the Supreme Court.

is a construction of the statute that imposes limitations on the "anything-of-value" element, beyond the requirement that the transaction, in connection with which the accepter of corrupt payments intended to be influenced, involves anything of value of $5,000 or more. Thus, to the extent that *Foley* required the Government to plead and prove that the transaction involved something of value *to the governmental entity that received the requisite amount of federal funds,* that narrowing construction of the statute must also be discarded.

However, to the extent that *Foley* requires at least some connection between the bribe and a risk to the integrity of the federal funded program, nothing in *Salinas* disturbs such a requirement. Indeed, though the Supreme Court deemed it unnecessary to consider whether some "other kind of connection" between the bribe and the federal funds was required, *i.e.,* other than directly affecting the expenditure of such funds, it was careful to note that the statute survived the constitutional as-applied challenge because the benefit obtained by means of the bribe— the preferential treatment—"was a threat to the integrity and proper operation of the federal program." *Id.* Thus, even after *Salinas, Foley* would not permit the Government to use section 666(a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks department had received a federal grant of $10,000.

In considering the application of *Salinas* and what remains of *Foley* to the pending appeal, we face two distinct issues: (a) may section 666(a)(1)(B) be applied to the circumstances shown by the evidence, and (b) even if it may, was it necessary for the indictment to allege, and the jury to be instructed that it must find, the requisite relationship between the bribes and the integrity of a federally funded program.

■ *Permissibility of appellants' conviction after* Salinas. The circumstances of appellants' acceptance of corrupt payments easily satisfy the statutory requirements, as we are now instructed to understand them. The evidence established that the City of Waterbury received more than $10,000 in the rele-

vant years, and the corrupt transactions—the conferring of financial benefits on the appellants for past support of real estate transactions and expected future support of such transactions—exceeded $5,000 in value. Since we now understand that there is no requirement that the corrupt transactions are worth $5,000 or more *to the entity receiving the federal funds,* appellants cannot defeat their corrupt payments convictions by showing that the favorable treatment they obtained from Waterbury was not worth more than $5,000 *to Waterbury.* Their favorable treatment was clearly worth more than $5,000 to them.

The evidence also satisfies the requirement of *Foley,* undisturbed by *Salinas,* that the transaction sought to be influenced had some connection with a federal program. *See Foley,* 73 F.3d at 493. Indeed, *Salinas* may be read to indicate that the "threat to the integrity and proper operation of [a] federal program" created by the corrupt activity is necessary to assure that the statute is not unconstitutionally applied. *See* 522 U.S. at ——, 118 S.Ct. at 475. In the pending case, corrupt payments were made by real estate developers to secure the use of the appellants' influence with city agencies "including the City Plan Commission, the Zoning Commission, the Water Department, and the Fire Marshal," Indictment ¶ 21, and the use of their influence to further the interests of the developers "in the appointments of members and chairpersons of land use boards and relevant committees and agencies in the City of Waterbury," *id.* ¶ 25. During the relevant periods, substantial federal funds were received by Waterbury for housing, urban development, and other programs within the purview of these agencies and officials. Since federal funds were received by Waterbury for housing and urban development programs and the corrupt payments concerned real estate transactions within the purview of the agencies administering federal funds, the requisite connection between the bribes and the integrity of federally funded programs is satisfied. Thus, this is not a case where the transactions sought to be influenced concerned one department of a city and the requisite $10,000 of federal

funds were received by a totally unrelated department.[3]

*Sufficiency of indictment and jury charge.* As just noted, the indictment sufficiently alleged a connection between the corrupt transactions and agencies of the City administering programs that received federal funds. However, the jury charge did not require a finding that such a connection existed. In considering the significance of this omission, we first point out that nothing in *Salinas* or *Foley* explicitly requires the jury to find a connection between the corruption and a federal program. In *Salinas,* the Supreme Court itself noted the connection—there, the threat to the integrity of a federal program—to answer a constitutional as-applied challenge, and there is no indication in the opinions of the Supreme Court or the Fifth Circuit that the jury was instructed to make any finding on this issue.

Even if a proper jury instruction should require a finding of some connection between the corruption and a federal program, a matter we need not decide in this case, the appellants cannot benefit from the omission of such an instruction in their pending collateral attack. In the first place, there was no request at trial for an instruction concerning a link between the corruption and a federal program, nor any objection to the lack of such an instruction. The error, if any, was therefore forfeited in the absence of cause for not raising the point on direct appeal and resulting prejudice. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). No adequate cause has been shown. This case is unlike *Peck v. United States,* 73 F.3d 1220 (2d Cir.1995) (*"Peck I"*), *rehearing in banc denied as moot and appeal remanded to panel,* 102 F.3d 1319, 1320–21 (2d Cir.1996) (in banc) (*"Peck II"*), where cause for the omission of a jury instruction existed because at the time of Peck's trial, prevailing Second Circuit precedent precluded the instruction that a subsequent Supreme Court decision made necessary. *See id.* at 1225–26. At the

time of the appellants' trial, however, no precedent of this Circuit precluded an instruction of the sort that is now arguably required.

Moreover, even if cause existed for not raising the contention on direct review, the omission of the instruction would not warrant relief on collateral attack in light of the governing principles of review enunciated in *California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), and applied by this Court in *Peck v. United States,* 106 F.3d 450 (2d Cir.1997) (*"Peck III"*). *Peck III* noted three applicable principles. First, on collateral attack, the standard of review for an alleged error in omitting or misdescribing an element is whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at 454 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Second, the degree of certainty applicable to the reviewing court is " 'grave doubt as to the harmlessness' " of the alleged error, *id.* (quoting *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)), *i.e.,* "when 'the matter is so evenly balanced that [the judge] feels himself in virtual equipoise as to the harmlessness of the error,' " *id.* at 454–55 (quoting *O'Neal,* 513 U.S. at 435, 115 S.Ct. at 994). Third, the methodology for ascertaining whether the standard has been met to the requisite degree of certainty is examination of the record as a whole to determine what a properly instructed jury would have done, rather than to inquire whether some finding of the jury is tantamount to a finding on the omitted or misdescribed element. *See id.* at 455–56 (citing *Roy,* 519 U.S. at 4–6, 117 S.Ct. at 338–39).

Applying this approach, we conclude, based on the entire record, that the jury in the pending case would have found beyond a reasonable doubt that a significant relationship existed between the payments received by the defendants and the federally funded

---

**3.** We need not consider whether Santopietro's role as mayor—the chief executive officer of the city and hence the officer ultimately responsible for all city departments—would render the statute applicable to corrupt payments received by

him for any transaction involving the city, even though the federal funds were received for a program entirely unrelated to the program in connection with which the corrupt payments were made.

programs of the City of Waterbury. The corrupt payments were received from developers involved with federally funded housing and redevelopment programs of the City. We therefore can be confident that the alleged error in the charge did not have a "substantial or injurious" effect on the verdict, and we entertain no grave doubt on that issue. As a result, the section–666–related convictions of Santopietro and Pisciotti must be reinstated.

## II. Santopietro's Appeal

■ Santopietro's appeal raises several challenges to the revised sentence imposed after the convictions on the section–666–related counts were set aside. With the reinstatement of those convictions, resentencing will be required. The District Court will be required to consider the defendant "as he [stands] before the court at that time." *United States v. Core*, 125 F.3d 74, 77 (2d Cir.1997). *Core* made that observation with respect to the issue of whether a resentenced prisoner might be eligible for a departure based on rehabilitation while serving the original sentence, but the point is equally applicable to all aspects of resentencing. In the pending case, with the section–666–related convictions reinstated, the ultimate sentence imposed at resentencing might not include the adjustments and departures that the District Judge made with respect to the revised sentence. Even if some of them are made, they might not affect the ultimate sentence, for example, because of the interplay of the grouping rules, *see* U.S.S.G. §§ 3D1.1–.5, or because the sentencing judge indicates an intention to impose the same sentence in circumstances where, with or without a challenged adjustment, the defendant· is exposed to the same sentence bracketed by overlapping guideline ranges. *See United States v. Bermingham*, 855 F.2d 925, 934 (2d Cir.1988). We therefore need not consider Santopietro's challenges to a relevant conduct departure, an abuse-of-trust enhancement on tax fraud counts, the loss

calculation on the bank fraud counts, or the application of the grouping rules.

Santopietro's appeal raises one issue, however, that is certain to arise at resentencing following our remand—which version of the Sentencing Guidelines will apply to the resentencing. He contends that application of the 1989 version of the Sentencing Guidelines, which was in effect at the time of his original sentencing, violates the *Ex Post Facto* Clause, U.S. Const. art. I, § 9, cl. 3, because it is more severe than the 1988 version, which, he contends, was in effect at the time of his offense.[4] The Government responds that Santopietro's "criminal conduct of conviction," Brief for United States at 11, continued into early 1990 when he filed his 1989 tax return, which became the basis of one of his tax fraud convictions.

■ If we were considering sentencing on only the count charging a tax fraud in early 1990, the Government's position would be correct since "[t]he last date of the offense, as alleged in the indictment, is the controlling date for *ex post facto* purposes." *United States v. Broderson*, 67 F.3d 452, 456 (2d Cir.1995). However, Santopietro's ·case involves multiple counts—two counts of bank fraud, two counts of tax evasion, eight substantive counts and one conspiracy count concerning embezzlement of federal funds, and the five section–666–related counts to be reinstated by today's decision, and the conduct underlying most of the counts was completed during the time the 1988 version applied; only the conduct underlying the tax count concerning the 1989 return continued into a period to which the 1989 version applied. The application of an appropriate Guidelines version or versions in such circumstances raises a· difficult issue· that neither the Government nor Santopietro have fully grappled with on this appeal. Though both sides recognize that this Circuit has endorsed the so-called "one-book" rule, under which one version of the Guidelines has been applied to all aspects of a sentence calculation, at least

---

**4.** The Government acknowledges that the 1989 version increases the adjustment· for loss resulting from bank fraud (in the amount attributed to Santopietro) by two levels compared to the loss adjustment in the 1988 version. The Government contends that the 1989 version resulted in a net increase in the adjusted offense level of only one because the two-level increase in the bank fraud offense level was partially offset by a one-level decrease in the way the grouping rules applied to determine the adjusted base offense level.

under some circumstances, *see United States v. Keller,* 58 F.3d 884, 890 (2d Cir.1995); *United States v. Stephenson,* 921 F.2d 438, 441 (2d Cir.1990), they disagree as to which version is applicable, and they have not considered the possibility that the one-book rule might not be fully applicable to sentences based on multiple counts.

The issue could be resolved in any of three ways. One way is to calculate the aggregate sentence for all counts under both the early and later versions and apply the version yielding the lesser sentencing range. That appears to be the solution endorsed by this Court in *Keller,* 58 F.3d at 890–93. However, since *Keller* concerned sentencing on only one count, it never reckoned with the special problems of sentencing on multiple counts.

A second approach is to apply the more severe version (usually the later version) to the aggregate sentence on all counts so long as the conduct underlying at least one count occurred during the time to which that version applies. That appears to be the solution endorsed by this Court in *Broderson,* 67 F.3d at 456–57. However, *Broderson* involved what appears to be a series of similar counts on which concurrent sentences were imposed. Since one count of the similar counts was determined to warrant sentence calculation under the later (more severe) Guidelines version, the Court never had to reckon with the possibility that applying the later version to all counts might result in an enhanced sentence on dissimilar counts based entirely on conduct ending before the time to which the later version applied.

A third approach is to apply the early version to counts as to which the underlying conduct was completed before the later version became effective and apply the later version to counts involving subsequent conduct. That is the approach endorsed by the Ninth Circuit. *See United States v. Ortland,*

109 F.3d 539, 545–47 (9th Cir.1997). This approach makes an inroad on the one-book rule and can encounter further difficulties as to whether the grouping rules of the earlier or later versions are to be applied, after each version has been used to determine the adjusted base offense level for each count.

The Commission has issued a policy statement specifying that where some offenses occur before and some occur after a revised Guidelines version, the later version is to be applied to all offenses. *See* U.S.S.G. § 1B1.11(b)(3) (1998). The Eleventh Circuit, *see United States v. Bailey,* 123 F.3d 1381, 1402–07 (11th Cir.1997), and the Eighth Circuit, *see United States v. Cooper,* 35 F.3d 1248, 1250–53 & n. 7 (8th Cir.1994), *vacated,* 514 U.S. 1094, 115 S.Ct. 1820, 131 L.Ed.2d 742 (1995), *reinstated without opinion,* 63 F.3d 761 (8th Cir.1995), endorse this approach, at least as applied and apparently limited to a series of similar offenses.[5] However, the Third Circuit appears to reject this approach, noting that, because of *ex post facto* concerns, "while the one-book rule cannot apply to compel application of the *later* Manual to all counts, it certainly can compel application of the earlier Manual." *United States v. Bertoli,* 40 F.3d 1384, 1404 n. 17 (3d Cir.1994). Our opinion in *Keller* quoted this language from *Bertoli* with approval, *see* 58 F.3d at 890, although the approval might be regarded as limited to the one-count situation we there considered.

With the issue not definitively settled in this Circuit as to multi-count cases and the positions of other circuits in conflict, we are hesitant to pronounce on the matter in the absence of a comprehensive presentation by the parties. Moreover, it is possible that the ultimate aggregate sentence to be imposed on remand will not be affected by whether the 1988 or 1989 version is applied.[6] Under

---

5. *Bailey* noted that "the one book rule, together with the Guidelines grouping rules and relevant conduct, provide that *related offenses committed in a series* will be sentenced together under the Sentencing Guidelines Manual in effect at the end of the series." 123 F.3d at 1404–05 (footnotes omitted; emphasis added).

6. It is even remotely possible that at resentencing neither version will apply. At resentencing, the

sentencing judge is to apply the Guidelines in effect at the time of sentencing, unless that version, considered as a whole, results in a sentence more severe than the sentence calculated under the version in effect at the time of the offense. *See Keller,* 58 F.3d at 890–93. It is conceivable, though unlikely, that the version in effect at the time of resentencing will benefit Santopietro, compared to either the 1988 or 1989 versions.

these circumstances, we will leave the matter for consideration by the District Court upon the resentencing that our remand requires.

## III. Vitarelli's Appeal

Vitarelli contends that he was subjected to "retroactive misjoinder," Brief for Vitarelli at 20, because of prejudicial spillover resulting from evidence introduced on the section–666–related counts that were set aside by the District Court on collateral attack. In light of our decision on the Government's appeal and cross-appeal with respect to Pisciotti and Santopietro, Vitarelli was not entitled to have his convictions on the section–666–related counts set aside. Since he was properly tried and convicted on those counts, he cannot complain about misjoinder. *See United States v. Gabriel*, 125 F.3d 89, 105 (2d Cir.1997) (retroactive misjoinder claim moot where convictions affirmed). The fact that he undeservedly obtained the benefit of having those convictions set aside does not entitle him to the even more undeserved benefit of having his remaining conviction set aside. Indeed, had the Government cross-appealed as to him, his vacated convictions would have been reinstated.

## Conclusion

On the Government's appeal as to Pisciotti and cross-appeal as to Santopietro, the amended judgments imposing revised sentences on Pisciotti and Santopietro are vacated, and their cases are remanded for reinstatement of their section–666–related convictions and resentencing. On Santopietro's and Vitarelli's appeals, we affirm.