EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority opinion insofar as it upholds appellants’ convictions and sentences. However, the majority vacates several convictions premised on violations of 18 U.S.C. § 666 because, in its view, Chaney Phillips, St. Helena Parish’s Tax Assessor, was not an “agent” of St. Helena Parish (“the Parish”). Because the statutory definition of “agent” clearly encompasses the position of Tax Assessor, and because our precedent dictates an outcome contrary to the majority opinion, I disagree. Accordingly, I dissent in part.
Section 666 provides, in relevant part, that:
Whoever ... being an agent of an organization, or of a state, local, or Indian tribal government, or any agency thereof [which receives benefits in excess of $10,000 under a federal program]—
(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
(i) is valued at $5,000 or more, and
(ii) is owned by, or is under the care ... or control of such ... agency
shall be fined under this title, imprisoned not more than ten years, or both.
18 U.S.C. § 666. As this language makes clear, all that is relevant in determining whether a defendant has violated § 666 is: (1) whether a local body receives more than $10,000 under a federal program, (2) whether the defendant is an “agent” of the body, and (3) whether the defendant “embezzles, steals, [or] obtains by fraud” funds of the body. See United States v. Moeller, 987 F.2d 1134, 1137 (5th Cir.1993) (“There are only two requirements necessary to bring a defendant within section 666. First, the defendant must be an agent of a government agency which receives in excess of $10,000 from the federal government within a one year period. Second, the defendant must engage in conduct proscribed by section 666(a)(1)(A) or (B).”).
It is undisputed that St. Helena Parish received more than $10,000 in federal benefits — funds from the federal food stamp program' — and the jury found that Phillips embezzled, stole, or obtained by fraud thousands of dollars “belonging to and under the care, custody and control of the *422 Parish.”[1] Phillips is thus guilty of violating § 666 if he is an “agent” of the Parish, which the statute defines as “a person authorized to act on behalf of [the Parish] ... including] a servant or employee, [or] a partner, director, officer, manager, [or] representative.” 18 U.S.C. § 666(d)(1).[2]
Phillips clearly falls within this definition in at least two ways. First, there is no doubt that, at least in some respects, Phillips is “authorized to act on behalf of’ the Parish. The district court held that “[t]he assessor’s primary function is to assess the value of real property within the parish for the parish ad valorem property tax. In performing those duties, he is clearly acting as an agent of the parish.” United States v. Phillips, 17 F.Supp.2d 1016, 1017-18 (M.D.La.1998). The majority does not challenge this finding; rather, it asserts that “the question is whether Phillips was authorized to act on behalf of the Parish with respect to its [federal] funds.” However, as described below, this specific nexus — between Phillips and the federal funds inside Parish coffers — is not required. There is no dispute that, to fulfill his duties in ascertaining the proper amount of property taxes residents must pay to the Parish, Tax Assessor Phillips is “authorized to act on behalf of’ the Parish. Under a plain reading of the statute, our inquiry should end there. See United States v. Westmoreland, 841 F.2d 572, 576 (5th Cir.1988) (“Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. Only the most extraordinary showing of contrary intentions in the legislative history will justify departure from that language.”) (citations omitted).
Phillips also falls within the § 666 definition of “agent” because he is an “officer” of the Parish as defined by Louisiana law.[3] See 18 U.S.C. § 666(d)(1) (defining “agent” as, inter alia, an “officer” of the governmental body). The Louisiana Constitution itself includes tax assessors in a provision defining “Parish Officials.” See La. Const., art. 6, § 5(G) (“Palish Officials and School Boards Not Affected. No home rule charter or plan of government shall contain any provision affecting a school board or *423 the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law.”) (emphasis added). Various Louisiana statutes reach the same conclusion. For example, La. R.S. § 13:5108 provides that the state will indemnify “officials, officers, and employees of the state,” exempting from this provision “parish officials set forth and named in Article VI, Sections 5(G) and 7(B) of the Constitution.” La. R.S. § 13:5108.2A(2). As § 5(G) of the Louisiana Constitution includes parish tax assessors, the statute unambiguously identifies tax assessors as officers of the Parish, and thus “agents” of the parish for § 666 purposes.
In applying the broad definition of “agent” provided in § 666(d) to avoid constitutional problems, our precedents require “some nexus between the criminal conduct and the agency receiving federal assistance.” Moeller, 987 F.2d at 1137. We do not require the criminal conduct to necessarily, or even potentially, affect the particular funds within the coffers of local government which have been provided by a federal source. Nor do we require the government to prove a distinct federal interest in protecting the particular funds stolen by a defendant.[4] Rather, for § 666 liability to attach, it is sufficient that the criminal conduct affect the agency receiving federal assistance; in essence, we have determined that -there is an inherent federal interest in insuring that agencies receiving significant amounts of federal funding are not corrupt. See Westmoreland, 841 F.2d at 577-78 (“It is sufficient that Congress seeks to preserve the integrity of federal funds by assuring the integrity of the organizations or agencies that receive them.”); United States v. Marmolejo, 89 F.3d 1185, 1193 (5th Cir.1996) (“Any reference to federal funds is conspicuously absent from the operative provisions, allowing Congress to ensure the integrity of federal funds by protecting the integrity of the organizations that receive them.”); cf. Fischer, 120 S.Ct. at 1787 (describing how § 666 “reveals Congress’ expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs”).
The minimal nexus required — between Phillips’s misconduct and the Parish itself — plainly exists here. Despite the fact that the assessor’s office has created an *424 “Assessment District” and is to some degree self-funded, Louisiana law provides that each Parish must provide “offices, furniture, and equipment” as well as utilities for the tax assessor’s office and mandates that the “cost of such furniture and equipment ... as may be needed by the tax collector and assessors of each parish shall be borne proportionately by all tax recipient bodies in the parish.” La. R.S. § 33:4713.[5] Therefore, despite the existence of an assessment district, the tax assessor’s office is to some extent funded by the Parish; as the district court noted, “testimony at trial indicated that the St. Helena Police Jury provided funding to the assessor’s office.” Phillips, 17 F.Supp.2d at 1018. Our previous cases have extended § 666 liability to all those “who may administer federal funds, regardless of whether they actually do,” United States v. Marmolejo, 89 F.3d 1185, 1192 (5th Cir.1996). Here, because the St. Helena Parish Tax Assessor “may” administer funds given to the Parish and provided by the Parish to the Assessor’s Office, the connection between Phillips and the Parish is legally sufficient.
As a result, the majority overreaches when it claims that the conduct for which Phillips and Newman were convicted could not possibly affect the integrity of the federal funds contained within Parish coffers. Phillips paid Newman $800 per month from the tax assessor’s office treasury for doing little or no work; in exchange, Phillips received a substantial credit against his account at Newman’s hardware store. Because Phillips’s criminal activity diminished the assessor’s office coffers by $800 per month, and because the Parish was responsible by law to pay any deficit in the assessor’s office budget, see La. R.S. § 33:4713, Phillips’s misconduct made it substantially more likely that Parish funds (including those received from the federal food stamp program) would be unnecessarily expended. In this respect, there was “some nexus between the criminal conduct and the agency receiving federal assistance.” Moeller, 987 F.2d at 1137. Phillips’s theft, by increasing the possibility that Parish funds would be unnecessarily used to fund the assessor’s office, could have affected the integrity of the federal funds in Parish coffers. Under our precedent, it is irrelevant that the program from which the Parish receives federal funding — the federal food stamp program — was not actually compromised. See id. (“The particular program involved in the theft of bribery scheme need not be the recipient of federal funds.”).
The majority limits the definition of “agent” for § 666 purposes only to those “authorized to act on behalf of the Parish with respect to its [federal] funds” and exaggerates the separation between the Parish government and the tax assessor’s office in part to avoid the “troubling constitutional questions” that the clear meaning of the statute raises. However, while *425 the desire to avoid troubling constitutional problems with a statute is laudable, see Jones v. United States, — U.S. -, 120 5.Ct. 1904, 1911, 146 L.Ed.2d 902 (2000) (“[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.”), it is impossible to fulfill in this case because we have already decided the statutory question before us — whether the separation of federal food stamp funds from other funding in Parish coffers renders insufficient the connection between those federal funds and the Parish Tax Assessor’s Office — contrary to the majority opinion. Our cases firmly establish (as a statutory and constitutional matter) that so long as a defendant has the requisite agency relationship with the body of local government receiving the federal funds, § 666 covers his misconduct regardless of whether his particular conduct affected those funds in particular.[6]
A brief examination of Westmoreland and Moeller makes this clear. In West-moreland, a county supervisor took bribes in connection with her purchase of road and bridge-building materials for the county. Federal jurisdiction under § 666 was premised on the county’s receiving general revenue sharing funds from the federal government. Westmore-land argued that because the federal funds received by the county “were segregated and not expended for the types of purchases she made,” Westmoreland, 841 F.2d at 574, her conduct could not affect the integrity of the federal funds. We rejected that argument, reasoning that even if Westmoreland’s authority did not extend to purchases using federal funds, “an agent violates subsection (b) when he engages in the prohibited conduct in any transaction or matter or series of transactions or matters involving $5,000 or more concerning the affairs of the local government agency.” Id. at 567 (emphasis added) (citation omitted). Under Westmoreland, conduct effecting the agency receiving federal assistance, irrespective of whether such conduct could effect that federal assistance, is sufficient to meet the nexus requirement.
Likewise, in Moeller, we considered whether employees of the Texas Federal Inspection Service (TFIS) — a joint federal-state agency without any federal funding'— were “agents” of the Texas Department of Agriculture (TDA) — a Texas state agency with over $10,000 in federal funding — for § 666 purposes. While the majority points out several distinctions between the relationship we considered in Moeller and the connection between the Parish and the Parish Tax Assessor’s Office, the relevant facts are virtually identical. There, TFIS employees merely enforced state produce regulations, and the money gathered as a result of those functions went directly into the state treasury. Id. at 1138. Here, Assessor’s Office employees assess the value of real property within the Parish and, hence, determine how much money Parish residents will pay the Parish in the form of ad valorem property taxes. Employees of the tax assessor’s office perform their jobs on behalf of the Parish, and such labor leads directly to the filling of Parish coffers. Cf. Moeller, 987 F.2d at 1138 (“TFIS enforced regulations promulgated by TDA and the funds collected by those regulatory functions were remitted directly to the state treasury.”). The distinguishing facts identified by the majority — that the powers and duties of the assessor’s office are defined by state, rather than Parish, law— are of no consequence.
Phillips’s crime, basically payroll fraud of a local government agency, may not be — as a policy matter — best prosecuted *426 by the federal government in the federal courts.[7] However, as described above, the text of § 666 and the precedents of this court allow the federal government to prosecute this crime. While Salinas and its progeny potentially forecast that our literal application of the expansive “agent” definition provided by § 666 may some day be overruled, our precedent remains unaffected and clearly binds this Court to reject the analysis offered by the majority. Accordingly, I believe that the district court correctly applied Westmoreland, Moeller, and Marmolejo in upholding appellants’ § 666 convictions. I dissent in part.[8]

. Though the majority contends that the record "utterly fails to establish” that the funds fraudulently paid to Newman were owned by, or under the care, custody, or control of the Parish, neither appellant challenges this finding on appeal. Nor, as the majority admits, does either appellant challenge whether the federal food stamp funds received by the Parish are the type of “benefits” intended by the statute. See Fischer v. United States, - U.S. -, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000) (holding that medicare reimbursements given to health care providers constitute "benefits” as defined by § 666).

. Because § 666 specifically defines the term "agent” for purposes of the statute, the "standard agency principles” noted by the majority are simply irrelevant. We must interpret § 666(d) as written, and cannot use hornbook agency principles to restrict the broad definition of "agent” that Congress provided. Even if we did so, furthermore, the results would be unavailing. The majority’s description of Louisiana law combined with its use of "standard agency principles” appears to make the tax assessor an "agent” of the state. Appellants do not make this argument, however, as it is virtually certain that the state receives far more than the requisite $10,000 in federal funding. Appellants sole possibility for avoiding § 666 liability is if the assessor is an agent of the St. Helena Parish Tax Assessment District only and no other body of local government. As described below, the statute and our precedent preclude this limiting definition.

.Section 666 does not define the term "officer.” However, the expansive statutory definition of "agent” including, inter alia, an "employee, partner, manager, officer, [or] representative” of the agency recognizes that an individual can affect agency funds despite a lack of power to authorize their direct disbursement. Therefore, to broadly protect the integrity of federal funds given to an agency, § 666 applies to any individual who represents the agency in any way, as representing or acting on behalf of an agency can affect its funds even if the action does not directly involve financial disbursement. There is no authority in the text of § 666, legislative history, or caselaw to support the majority's holding that the tax assessor cannot be an officer of the Parish because his duties and responsibilities are defined by state law.

. As the majority notes, several of our sister circuits have required the government to prove that a federal interest is implicated by the defendant’s conduct to constitutionally allow a conviction under § 666. See United States v. Zwick, 199 F.3d 672, 687 (3d Cir.1999) ("[W]e hold that 666 requires that the government prove a federal interest is implicated by the defendant’s offense conduct.”); United States v. Santopietro, 166 F.3d 88, 93 (2d Cir.1999) (noting that it "would not permit the Government to use section 666(a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city’s parks department had received a federal grant of $10,000”). However, as described above, ”[t]he Fifth Circuit [has] contrasted its own position, expressed in Westmoreland, that the statute does not require any relation between the $5,000 thing of value and the federal funds received by the local agency.” Santopietro, 166 F.3d at 91. Admittedly, the Supreme Court’s decision in Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) “may be read to indicate that the threat to the integrity and proper operation of a federal program created by the corrupt activity is necessary to assure that the statute is not unconstitutionally applied.” Santopietro, 166 F.3d at 91. However, as the Second Circuit noted in Santopietro, Salinas did not dispute our decisions in Westmoreland and Marmolejo; rather, it expressly reserved the question of whether “the statute requires some other kind of connection between a bribe and the expenditure of federal funds.” See Santopietro, 166 F.3d at 91 (citing Salinas, 118 S.Ct. at 474). We are thus bound, at least as a panel of three judges, to our analysis in Westmoreland and its progeny. See Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir.1999) (“It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court, a panel cannot overrule a prior panel's decision.”). Circumventing those decisions, which the majority opinion essentially does, is a matter for this court to accomplish en banc if at all.

. One commentator describes how the expenses of the Assessor’s Office are provided for as follows:
The cost of furniture, maps, and supplies needed by the tax assessors are borne proportionately by all taxing bodies in the parish under the traditional modus operandi of Louisiana parish government. These items are purchased by the parish governing body and billed to the other taxing bodies.
The salaries and expense allowances of parish assessors are enumerated in state statutes. Each taxing body in a parish contributes a pro-rata share to payment of the assessor’s salary and expenses in proportion to their percentage of the total ad valo-rem tax collection of the parish. The sheriff remits the amounts due directly to the assessor from the first taxes collected each year.
Some relief from payment of the assessor’s office expenses is afforded to the parish governing body in those parishes where the assessor has availed himself of the prerogative to finance his office by means of a millage levied on the assessed valuation of all property on the tax rolls of a statutorily created “Assessment District.”
I. Jackson Burson, Jr., Not Endowed By Their Creator: State Mandated Expenses of Louisiana Parish Governing Bodies, 50 La. L. Rev. 635, 647 (1990) (emphasis added) (citations to various provisions of the Louisiana code omitted).

. The majority argues that "the fraud must have the potential to affect the identified federal program” and that the government failed to prove that theft from Parish funds would necessarily implicate the funds from the food stamp program. The government’s failure to introduce such proof, however, is understandable because under our precedent, the fact that appellants’ conduct could effect the funds of the Parish — regardless of its potential effect on the federal funds contained therein — is sufficient to meet the required nexus.

. Contrary to the majority’s remark, I do not dismiss the federalism concerns inherent in the interpretation of § 666 as a mere "policy matter." Simply, while important, federalism does not allow us to strictly construe this statute which, by its clear language, is "expansive both as to the conduct forbidden and the entities covered.” Fischer, 120 S.Ct. at 1787 (citing Salinas, 522 U.S. at 56, 118 S.Ct. 469).

. As I would uphold the § 666 convictions, I would also uphold the money laundering convictions under 18 U.S.C. § 1956(a)(1) which are based in part on them. Further, as Katie Newman was indeed a participant in this illegal activity, Phillips's sentencing enhancement for being the leader or organizer of a criminal enterprise of five or more participants was not clearly erroneous. See United States v. Boutte, 13 F.3d 855, 860 (5th Cir.1994) (holding that to count as part of the enterprise for purposes of the enhancement, individuals "need only have participated knowingly in some part of the criminal enterprise”). In short, I would uphold the district court in full.