**UNITED STATES of America,**

v.

**TRIUMPH CAPITAL GROUP, INC. et al.**

**No. CRIM. 3:00CR217(AHN).**

United States District Court, D. Connecticut.

Sept. 13, 2002.

Ethan A. Levin–Epstein, Robert A. Richardson, Garrison, Levin–Epstein, Chimes & Richardson, New Haven, CT, Tracy A. Miner, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, Richard M. Egbert, Law Office of Richard M. Egbert, Boston, MA, for Triumph Capital Group, Inc.

William F. Dow, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Tracy A. Miner, Keith P. Carroll, R. Robert Popeo, Cristina D. Hernandez–Malaby, Mintz,

Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Frederick W. McCarthy.

Donald J. McCarthy, Jr., McCarthy, Schuman & Coombes, Hartford, CT, Richard M. Asche, Russell M. Gioiella, Litman, Asche & Gioiella, New York City, Thomas E. Dwyer, Jr., David Osborne, Amy Baron–Evans, William H. Kettlewell, Dwyer & Collora, Boston, MA, Jack T. Litman, Todd B. Terry, Litman, Asche & Gioiella, New York City, for Charles B. Spadoni.

John M. McKenna, Goodman, Rosenthal & McKenna, West Hartford, CT, George C. McMahon, North Quincy, MA, for Lisa A. Thiesfield.

Jeremiah F. Donovan, Terry Donovan, Old Saybrook, CT, for Ben F. Andrews.

Nora R. Dannehy, Thomas V. Daily, David A. Ring, U.S. Attorney's Office, Hartford, CT, John H. Durham, Michael E. Runowicz, William J. Nardini, U.S. Attorney's Office, New Haven, CT, Mark G. Califano, U.S. Attorney's Office, Bridgeport, CT, Linda B. Bridgman, U.S. Securities & Exchange Comm., Boston, MA, David J. Stander, U.S. Department of Justice, Criminal Div., Washington, DC, for U.S.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

Presently pending before the court is the motion of defendants Triumph Capital Group, Inc. ("Triumph"), Frederick W. McCarthy ("McCarthy"), Charles B. Spadoni ("Spadoni") and Lisa Thiesfield ("Thiesfield"), (collectively, the "Defendants") to dismiss Counts 14, 15, 18 and 19 of the Superseding Indictment. These counts allege violations of 18 U.S.C. § 666, which covers theft or bribery concerning programs receiving Federal funds.

The defendants move to dismiss these counts on the grounds that the federal government lacks the authority to prosecute the defendants under § 666 because (1) the indictment fails to allege that the defendants' actions threatened the integrity and proper operation of a federally-funded program and (2) the indictment indicates the alleged activities of the defendants did not have such an effect. For the reasons discussed below, the Defendants motion to dismiss counts 14, 15, 18, and 19 [doc. # 292] is DENIED.

## STANDARD

■ Rule 7(c) of the Federal Rules of Criminal Procedure governs indictments. This rule only requires an indictment to contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." To be legally sufficient, an indictment must adequately charge the elements of an offense, fairly inform the defendant of the charges he must meet, and contain enough detail to permit the defendant to plead double jeopardy in a future prosecution based on the same set of events. *See e.g., United States v. Walsh,* 194 F.3d 37, 44 (2d Cir.1999). The Second Circuit routinely upholds the legal sufficiency of indictments that do little more than track the statutory language of the offense charged and state the approximate time and place of the alleged crime. *See id.*

■ An indictment does not have to set forth evidence or details of how the crime was committed. *See e.g., United States v. Carrier,* 672 F.2d 300, 303–04 (2d Cir.1982). The validity of an indictment is tested by its allegations, not by whether the government can prove its case. *See Costello v. United States,* 350 U.S. at 63. Thus, a technically sufficient indictment "is

not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *See, e.g., United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir. 1998) (holding that district court erred in dismissing indictment based on sufficiency of evidence); *United States v. Paccione,* 738 F.Supp. 691, 696 (S.D.N.Y.1990). "It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency." *United States v. Gambino,* 809 F.Supp. 1061, 1079 (S.D.N.Y.1992). For this reason, in considering a defendant's motion to dismiss an indictment, the court must be aware of claims that conflate or confuse sufficiency of the government's evidence with sufficiency of the government's allegations.

■ Under Federal Rule of Criminal Procedure 12(b), however, a defendant may raise, by pretrial motion, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue." Fed. R.Crim.P. 12(b). The United States Supreme Court determined that "[a] defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington,* 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969).

Further, the exception to the general principle regarding pretrial motions relating to the "general issue" is where the government has made a full proffer as to the evidence it will present to satisfy a particular element.[1] *See Alfonso,* 143 F.3d at 777.

---

1. At the request of the court, the government

made such a proffer. Thus, even if the matter

## DISCUSSION

### I. 18 U.S.C. § 666

Counts 14, 15, 18, and 19 of the Superseding Indictment charge the defendants with violating 18 U.S.C. § 666, the federal program bribery statute. The statute provides, in relevant part,:

(a) Whoever, if the circumstance described in subsection (b) of this section exists–

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof–

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that–

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a)-(b).

■■■■ The legislative history of the statute indicates that "the term 'Federal program' means that there must exist a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives." S.Rep. No. 98–225, at 370 (1983) ("Senate Report"), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511; *see also United States v. Zyskind,* 118 F.3d 113, 115 (2d Cir.1997); *United States v. Rooney,* 986 F.2d 31 35 (2d Cir.1993) (finding that the relevant inquiry in determining whether federal funds constitute "benefits ... under a Federal program" is "whether the funds disbursed can be considered Federal assistance within a specific statutory scheme intended to promote public policy objectives"). Congress intended that the term "Federal program" be interpreted broadly. See Senate Report at 369, 1984 U.S.C.C.A.N. at 3510.

Since the statute's enactment, however, much disagreement has resulted over the proper scope of the statute. *See* Cheryl Crumpton Herring, Commentary, *18 U.S.C. § 666; Is It a Blank Check to Federal Authorities Prosecuting State and Local Corruption?,* 52 Ala. L.Rev. 1317

of the federal nexus is found to be part of the "general issue," the court is in a position to

adjudicate the sufficiency of the government's evidence.

(2001) (discussing conflicts among the circuits over interpretation of § 666). One dispute concerned whether a bribe must directly affect federal funds in order to violate the statute. The Fifth and Sixth Circuits concluded there was no such requirement. *See United States v. Westmoreland*, 841 F.2d 572 (5th Cir.1988); *United States v. Valentine*, 63 F.3d 459 (6th Cir. 1995). The Second Circuit reached the opposite conclusion in *United States v. Foley*, 73 F.3d 484 (2d Cir.1996).

The Supreme Court recently attempted to resolve the circuit split. In *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Court held that a bribe need not directly affect federal funds in order to violate the statute. *See Salinas*, 522 U.S. at 56–57, 118 S.Ct. 469. In *Salinas*, a county sheriff and a deputy sheriff in Texas accepted money and property in exchange for allowing a federal prisoner who was housed in the county facility to have conjugal visits with his wife and girlfriend. *See id.* at 55, 118 S.Ct. 469. In exchange for the county housing federal prisoners, the federal government had made a grant to the county for improving its jail facility and also agreed to pay the county a certain amount per day for each federal prisoner held at the county facility. *See id.* at 54, 118 S.Ct. 469. The Court determined that the broad language used by Congress when it enacted § 666 would not support the interpretation that the bribe must directly affect federal funds. *See id.* at 57–58, 118 S.Ct. 469. The Court left unresolved, however, an equally thorny issue: whether there must be some type of connection between a bribe and the expenditure of federal funds. *See Id.* at 58, 118 S.Ct. 469. The *Salinas* Court found the relationship between the bribe and the federal funds "sufficiently close enough to satisfy whatever connection the statute might require," and expressly refused to explore the matter further. *See id.*

The Second Circuit took up this unresolved issue in *United States v. Santopietro*, 166 F.3d 88 (2d Cir.1999). The Court of Appeals conceded that *Salinas* "somewhat eroded Foley," but stated that "the extent of the erosion" was not clear. *See Santopietro*, 166 F.3d at 93. Nonetheless, the court concluded that the requirement of "at least some connection between the bribe and a risk to the integrity of the federal funded program" remained even after *Salinas*. *See id.*

Defendants contend that the government has failed to allege or properly establish that the purported bribes affected the integrity of a federal program and, therefore, the § 666 counts should be dismissed. Despite a valiant attempt by defendants' counsel, the court disagrees.

## II. The Superseding Indictment

The Superseding Indictment carefully tracks the language of the statute. It clearly alleges that the Connecticut State Treasurer's Office received, in a one year period, "benefits in excess of $10,000 under a Federal program, involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance, including but not limited to federal monies in excess of $10,000 which flowed through the CRPTF (Connecticut Retirement Plans and Trust Funds) as retirement contributions." (Ind., Count 3, ¶ 3). The Superseding Indictment specifically charges Triumph, McCarthy and Spadoni with giving, offering or agreeing to give financial support to Thiesfield and the "Paul Silvester for State Treasurer Campaign" with the intent to influence and reward Silvester for investing state pension assets with a Triumph related investment fund in violation of § 666(a)(2). (Ind., Count 15, ¶ 3). Count 19 charges Triumph, McCarthy and Spadoni with corruptly giving, offering or

agreeing to give valuable consulting contracts to Thiesfield and Christopher Stack, an associate of Silvester, with the intent to influence and reward Silvester for an increased investment of state pension assets with the fund Triumph Connecticut–II. (Ind., Count 19, ¶ 2). Counts 14 and 18 charge Thiesfield with aiding and abetting Silvester and others in the corrupt solicitation and receipt of the bribes charged in Counts 15 and 19. (Ind., Count 14, ¶ 3 and Count 18, ¶ 2).

The Superseding Indictment also alleges that (1) Silvester was an agent of the Connecticut state government as defined in § 666(d)(1), (Ind., Count 3, ¶ 2); (2) the Treasurer was the sole fiduciary for the CRPTF and therefore had unilateral authority to make investment decisions about the CRPTF's assets, (Ind., Count 1, ¶ 16); and (3) the Treasurer had the responsibility of managing the CRPTF in the sole interest of the beneficiaries, which included teachers and state and municipal employees (Ind., Count 1, ¶ 17).

■ Defendants argue that merely tracking the statutory language of § 666 is insufficient to withstand the motion to dismiss in this instance. Defendants maintain that in light of the Second Circuit's decision in *Santopietro,* a valid indictment must also allege, as an implied jurisdictional element of a § 666 charge, that the alleged bribe posed a threat to the integrity or proper operation of a federal program. Defendants argue that the failure to make this allegation is fatal to the § 666 counts. *See Foley,* 73 F.3d at 488 ("When ... one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense."). Defendants are incorrect in this assertion.

Nothing in Santopietro, *Foley* or *Salinas* requires the government to allege anything beyond the language contained in the statute. *Santopietro* even acknowledged that a proper jury instruction may not "require a finding of some connection between the corruption and a federal program." *Id.* Thus, the indictment will not be dismissed for failure to allege a threat to the integrity of a federal program. However, to the extent that such an allegation would be required, the court finds that the government has sufficiently established that such a threat exists. *See infra,* Part III.

## III. Threat to the Integrity and Proper Operation of a Federal Program

Defendants argue that the government has not and cannot establish that the alleged bribed posed a risk to the integrity of a federally funded program as required by the Second Circuit. They contend that the government has not identified either the federal program at risk or how the purported bribes put a federal program at risk. An examination of the government's Proffer sheds light on the shortcomings in the Defendants' argument and demonstrates that the government can sufficiently establish that the alleged bribes put a federal program at risk.

As a preface, the government notes that the Connecticut State Treasurer receives and disburses all monies belonging to the state. He is also the sole fiduciary for the CRPTF.

Federal dollars flow into the state as provided in the Cash Management Improvement Act of 1990. According to the terms of the Act, a state must first incur an approved expense, such as payroll or vendor costs, before it receives the federal funds. The system operates under a letter of credit grant through which "the recipient is provided a document giving authori-

zation to expend up to a specified amount for a particular program. State agencies draw on the letter of credit as they expend monies for payroll and any other expenses incurred in the operation of the state program. The letter of credit establishes the authorization to expend monies." (United States' Submitted Proffer Re: Title 18 U.S.C.ss 666—Jurisdiction and Federal Nexus, p. 4). When the agency expends funds, a request is made to the federal government and money to cover the expenditures is wired to the treasury bank account. The particular state agency does not receive the federal money "outright." That money goes to the Treasurer's Office and is never actually disbursed to the state agency that incurred the expense. The checks to cover the incurred costs are cut and signed by both the Treasurer and the Comptroller.

The following example will illustrate more clearly how this system works. A state agency, such as the Department of Social Services (the "Department"), has a federal grant to cover salary and related costs of its employees. The department sends a request to the Treasurer's Office to cover the employees' salaries. The Treasurer's Office, having received the funds from the federal government, would then transfer the funds to a payroll account under its management and control. Payroll checks or electronic deposits are made from the treasury accounts to the workers. In addition to the money paid directly to the employees, money is also contributed from the federal funds, at a federally approved rate, to the State Employee Retirement Fund ("SERF") for that covered employee. That retirement contribution never reaches the employee. Instead, it remains under the control and management of the Treasurer. SERF is included in the CRPTF. Under this scenario, there exists a federal program, the

integrity of which could be put at risk by a bribe made to the Treasurer.

■ The Second Circuit defined the term "federal program" to mean a specific statutory scheme authorizing the federal assistance. *See Zyskind,* 118 F.3d at 115 (quoting Senate Report at 370, 1984 U.S.C.C.A.N. at 3511). The letter of credit grants given to Connecticut by the federal government establish a statutory scheme and thus constitute a federal program. That the Treasurer is not the beneficiary of the federal program funds is of no consequence. The Treasurer need not be the beneficiary of the federal funds for the conduct to come under the provisions of § 666; rather, according to the statute, he need only receive the funds.

> The jurisdictional subsection, (b), uses the term "receives" rather than the phrase "is a beneficiary of" and the substantive subsection, (a), expressly reaches misappropriation not only of government moneys that were "owned by" the organization but also of moneys that came "under the care, custody and control of [the] organization." 18 U.S.C. § 666(a)(1)(A)(ii). Nothing in this language suggests that § 666 does not reach thefts by an agent of an organization that receives federal program moneys and administers those moneys for the benefit of the program beneficiaries.

*Zyskind,* 118 F.3d at 116.

■ Continuing with the example discussed above, when the state Treasurer accepts a bribe in exchange for investing state pension funds, which are in part subsidized directly by federal dollars, with certain entities, the integrity of a federal program is threatened. In *Santopietro,* the Second Circuit stated that "[s]ince federal funds were received by Waterbury for housing and urban development programs and the corrupt payments concerned real estate transactions within the purview of

the agencies administering federal funds, the requisite connection between the bribes and the integrity of federally funded programs is satisfied." *Santopietro,* 166 F.3d at 93. A similar scenario took place in the case at bar. Federal funds were received by the Treasurer's Office for, *inter alia,* retirement and pension funds and the alleged corrupt payments concerned transactions involving the pension funds. Thus, just as the court found in *Santopietro,* the necessary connection between the alleged bribes and the integrity of a federal program is satisfied. *See id.* That the pension funds may not have suffered as a result of the investment is not significant. *See id.* at 91.

The statutory scheme at work here is not a series of cascading tiers wherein any money originating from the federal government loses all federal character as it flows down to the workers and back to the investment fund. Rather, it retains its federal character even as it is invested through the Treasurer's office for the beneficiaries.

The government has met its burden of establishing that the statutory scheme for distributing federal money through the Treasurer's Office would allow potential bribes to threaten the integrity and proper functioning of a federal program. Thus, the court will not dismiss the § 666 counts of the Superseding Indictment.

### CONCLUSION

For the reasons set out above, the Defendants' motion to dismiss counts 14, 15, 18 and 19 of the Superseding Indictment [doc. # 292] is DENIED.