**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-8277
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,


versus


MIKE MOELLER, PETER THOMAS
McRAE, and BILLIE QUICKSALL,

Defendants-Appellees.



_____

Appeals from the United States District Court
for the Western District of Texas

_____(April 1, 1993)_____

Before POLITZ, Chief Judge, GOLDBERG and JONES, Circuit Judges.

POLITZ, Chief Judge:

This appeal involves the applicability of 18 U.S.C. § 666 to the former Texas Federal Inspection Service. The government appeals the dismissal of certain counts of the superseding indictment against Mike Moeller, Peter Thomas McRae, and Billie B. Quicksall. We vacate and remand.



Background

McRae and Quicksall were indicted for, *inter alia*, improperly awarding TFIS consulting contracts to codefendants Russell Koontz

and Robert Boyd as compensation for their soliciting campaign contributions to support the candidacies of Moeller or Jim Hightower for Texas Agriculture Commissioner. Moeller was deputy commissioner of the Texas Department of Agriculture. McRae was a Special Assistant to Moeller at TDA until January 1988 when he became associate director of TFIS. Quicksall held various managerial positions at TFIS and TDA. All three were indicted for violations of 18 U.S.C. § 666, theft or bribery concerning programs receiving federal funds, and 18 U.S.C. § 371, conspiracy to commit an offense or to defraud the United States.

TFIS was created to perform federal and state inspections of agricultural products under a cooperative agreement between the United States Department of Agriculture and the TDA.[1] This agreement provided for joint supervision of TFIS by a Federal Supervising Inspector employed by USDA and a State Administrative Officer appointed by TDA.[2] The TFIS inspectors were not federal employees but were licensed to perform federal inspections. They performed shipping-point inspections where federal/state inspection certificates were issued, receiving market inspections where federal inspection certificates were issued, and they also enforced Texas state produce regulations.

---

[1] The agreement was entered under the authority of the Agricultural Marketing Act of 1946, 7 U.S.C. §§ 1621-27, and applicable Texas law. See Tex. Agric. Code art. 91.001-005.

[2] For example, disbursement of TFIS funds required joint approval of the Federal Supervisor and the Texas Commissioner of Agriculture, or their respective designees.

The agreement authorized TFIS to charge fees for shipping-point inspections,[3] 4% of which were remitted to the Agricultural Marketing Service to offset federal overhead expenses such as the salary of the federal supervising inspector.[4] For the relevant years, the fees TFIS remitted to AMS exceeded federal overhead expenses. Fees not remitted by TFIS to USDA could be used only for TFIS operating expenses. TFIS sometimes loaned inspectors to USDA to conduct inspections at terminal markets;[5] TFIS was fully reimbursed for the cost of these inspectors. All monies collected by TFIS for enforcement of state regulations were deposited in the state treasury.

The defendants moved to dismiss those charges of the indictment which predicated violations of 18 U.S.C. § 666, or conspiracy to violate that statute, upon their actions as TFIS officials.[6] The district court granted that motion, finding that

---

[3] The Agricultural Marketing Act authorizes collection of fees to cover the cost of inspection of agricultural products. 7 U.S.C. § 1622(h).

[4] Fees for inspections made pursuant to a cooperative agreement with a state may be "disposed of in accordance with the terms of such agreement." 7 C.F.R. § 51.44.

[5] A terminal market is one from which agricultural products are shipped out to markets outside the State of Texas. Generally, inspections at terminal markets were performed by USDA-employed inspectors.

[6] As part of the bribery scheme, the defendants also arranged for Boyd and Koontz to receive TDA consulting contracts. The counts of the indictment predicated upon the TDA contracts were not dismissed and are not subjects of this appeal.

TFIS did not receive $10,000 in benefits from a federal assistance program as required by section 666(b).  The trial court concluded that the defendants' misconduct as agents of TFIS was not within the court's subject matter jurisdiction.  The government timely appealed.

Analysis

In urging that the district court erred, the government advances two theories:  (1) TFIS received over $10,000 per year in federal benefits, or (2) TFIS is a subdivision of TDA, which indisputably receives the requisite amount of federal funding. Finding that this matter is readily resolved under the second postulation we pretermit consideration of the first.

The legislative history of 18 U.S.C. § 666 states that the statute was "designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program."[7]  Section 666 provides in pertinent part:

> (a)  Whoever,  if  the  circumstance  described  in subsection (b) of this section exists --
>
>> (1) being an agent of <u>an organization, or of a State, local, or Indian tribal government, or any agency</u> therof --
>>
>>> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly

---

[7]    S. Rep. No. 225, 98th Cong., 2d Sess. 369, <u>reprinted in</u> 1984 U.S. Code Cong. & Admin. News 3182, 3510.

4

converts to the use of any person other than the rightful owner or intentionally misapplies, property that --
  (i) is valued at $5,000 or more, and
  (ii) is owned by, or is under the care, custody, or control of <u>such organization, government, or agency</u>; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of <u>such organization, government, or agency</u> involving anything of value of $5,000 or more . . . .

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that <u>the organization, government, or agency</u> receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.[8]

The government contends that TFIS is a subdivision of TDA and, for purposes of jurisdiction, we may look to the federal assistance TDA receives. We find this contention persuasive with a refocusing. Taking the words of the statute at face value it is apparent that for purposes of the conduct proscribed by section 666(a)(1) the defendant must be an agent of the agency

---

[8]    18 U.S.C. § 666(a) and (b) (emphasis added).

     Subsection (c) provides:  "This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."  The parties dispute whether subsection (c) qualifies either only subsection (a), only subsection (b), or both (a) and (b).  Because we decide on other grounds, we pretermit this question as well.

receiving federal benefits in excess of $10,000.[9]  The critical inquiry is not the role of the TFIS and whether it interposes a separate entity shielding any violations of this statute, but the role of the defendants.  Specifically, we must determine whether the defendants were agents of TDA as they performed their functions for TFIS, the creation of TDA and the USDA.

We have recognized that in enacting section 666, "Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of whether they actually do."[10]  Although the conduct prohibited by section 666 need not actually affect the federal funds received by the agency,[11] there must be some nexus between the criminal conduct and the agency receiving federal assistance.  In **Westmoreland** we held that so long as the agency received $10,000 per year from a federal assistance program, its agents are subject to section 666.[12]  The particular program involved in the theft or bribery scheme need not be the recipient

---

[9]    There are only two requirements necessary to bring a defendant within section 666.  "First, the defendant must be an 'agent' of a 'government agency' that receives in excess of $10,000 from the federal government within a one-year period."  Second, the defendant must engage in conduct proscribed by section 666(a)(1)(A) or (B).  **United States v. Simas**, 937 F.2d 459, 463 (9th Cir. 1991).

[10]    **United States v. Westmoreland**, 841 F.2d 572, 577 (5th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 820 (1988); **United States v. Snyder**, 930 F.2d 1090 (5th Cir.), <u>cert</u>. <u>denied</u>, 112 S.Ct. 380 (1991).

[11]    **United States v. Little**, 889 F.2d 1367 (5th Cir. 1989), <u>cert</u>. <u>denied</u>, 495 U.S. 933 (1990); **Westmoreland**.

[12]    841 F.2d at 576.

6

of federal funds.[13]

Of critical importance to our inquiry, section 666 defines "government agency" thusly:

> [T]he term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program.[14]

TFIS and TDA are both indisputably "government agencies" as thus defined. TFIS is a legal entity established and subject to control by the federal and Texas state governments for the execution of an intergovernmental program. TDA is a subdivision of the executive branch of Texas state government. If in their roles at TFIS, McRae and Quicksall were agents of TDA, then TDA is a relevant agency for purposes of section 666(b).

To determine whether TFIS employees were agents of TDA, we need look no further than the cooperative agreement creating TFIS. TFIS operated under the joint supervision of USDA and TDA. In enforcing state produce regulations, TFIS performed discretionary functions on behalf of TDA.[15] TFIS enforced regulations promulgated

---

[13]   **Little**, 889 F.2d at 1369.

[14]   18 U.S.C. § 666(d)(2).

[15]   The agreement included among TDA's responsibilities:

Assume responsibility for training and supervising inspectors in the interpretation and enforcement of such State regulatory provisions of standardization, compulsory inspection citrus maturity, citrus color-add,

7

by TDA and the funds collected for those regulatory functions were remitted directly to the state treasury. Finally, the agreement provided that upon termination, all remaining funds held by TFIS would be transferred to any successor inspection service, or if no successor was created, then "all such funds or property would revert to [TDA] for its use or disposition."[16] We find that for purposes of section 666, McRae and Quicksall, in their positions at TFIS, were agents of TDA -- an agency that receives more than $10,000 per year in benefits from federal assistance programs. Moeller's alleged conspiracy with them is also covered by section 666.

The order of the district court dismissing Counts Five, Seven, Eight, and a part of Count One of the superseding indictment is VACATED and the matter is REMANDED for further proceedings.

---

> or other requirements pertaining to fruits and vegetables as [TFIS] shall enforce.
>
> Furnish such forms, stationery, licensing applications, equipment and administrative support as shall be necessary to <u>faithfully enforce such regulatory programs of the State as the Commissioner of Agriculture, Texas Department of Agriculture, shall request</u> that [TFIS] enforce.

(Emphasis added.)

[16] In 1990, the TDA-USDA cooperative agreement terminated and was not renewed. USDA entered an agreement with a private organization, the Fruit and Vegetable Growers and Shippers of Texas, to carry out TFIS's former functions.