[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11653
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cr-00318-JDW-TGW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN L. WHITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 31, 2014)

Before PRYOR, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Kevin White appeals his convictions and sentence of 36 months of

imprisonment for one count of conspiring to commit bribery, 18 U.S.C. § 371, two

counts of bribery concerning programs involving federal funds, id. §§ 2, 666(a)(1)(B), one count of conspiring to commit mail and wire fraud, id. § 1349, one count of honest services mail fraud, id. §§ 1341, 1346, 2, and two counts of honest services wire fraud, id. §§ 1343, 1346, 2.  White argues that there is insufficient evidence to support any of his convictions, but White abandons his challenges to his fraud offenses by failing to provide any substantive argument about them in his brief.  White also challenges the enhancement of his sentence for the value of a Lincoln Navigator given to his father, see United States Sentencing Guidelines Manual § 2C1.1(b)(2) (Nov. 2011), and for being an elected public official, see id. § 2C1.1(b)(3).  We affirm.

## I. BACKGROUND

In 2006, White was elected to serve as one of seven members of the Board of County Commissioners for Hillsborough County, Florida.  Hillsborough County has an annual budget of more than $3 billion, and in 2010, the County received about $106 million in benefits from the federal government.  The County Commissioners allocate the funds received by the County among its agencies, including the Sheriff's Office of Hillsborough County.

County Commissioners are required to serve on other boards and agencies, and in 2006, the Board appointed White to serve on the Hillsborough County Public Transportation Commission.  The Commission is an independent special

district created by the Florida Legislature to regulate public transportation in Hillsborough County and does not receive benefits from the federal government. The Transportation Commission is comprised of seven elected officials: three representatives from the Hillsborough County Commission; two representatives of the Tampa City Counsel; and one representative each from the cities of Temple Terrace and Plant City. Between 2006 and 2010, White served as Chairman of the Commission.

The Transportation Commission certifies tow truck companies to perform towing services for County agencies, such as the Sheriff's Office. To become certified, a towing company must submit an application disclosing information such as the name of its owner for purposes of a background check. Once certified, a towing company is eligible to work for County agencies, but that company must be selected by an agency to fill an opening on its towing rotation list.

In September 2009, George Hondrellis approached a fellow tow truck driver, Peter Rockefeller, about forming a towing company to work for Hillsborough County. Hondrellis divulged his plans to incorporate a company using a local tow truck driver as a nominee owner that would prevent the Transportation Commission from discovering his arrest record, and then to give bribes to White and members of White's family for their assistance in having the company added to the towing list for the Sheriff's Office. Rockefeller became an informant for the

3

Federal Bureau of Investigation and recorded his conversations with Hondrellis and other persons who joined Hondrellis's scheme.

During a series of meetings with Rockefeller, Hondrellis boasted that he could have his company added to the towing list for the Sheriff's Office because he knew White, his father, Gerald White, and his sister, Tonya White. Hondrellis said that he was already currying favor with White, who had observed Hondrellis "loan" Gerald $2,000. Hondrellis stated that he could pay White's father and sister, and the money they gave White could not be traced. Hondrellis said that Gerald had not repaid the loan and would not be required to if Hondrellis was added to a towing list. At the behest of the Bureau, Rockefeller joined Hondrellis's scheme and paid Hondrellis half of the $2,000 that he had given Gerald.

On January 7, 2010, Hondrellis introduced Rockefeller to White and Gerald. Hondrellis announced that Rockefeller was helping finance Hondrellis's towing company and they wanted it to operate "[i]n the downtown area only." White acted nervously, but he did not protest when Gerald said that White would "roll with" whatever Gerald recommended. White asked Hondrellis what he was doing with "the licensing thing," and when Hondrellis responded that he was forming his company using a nominee owner, White replied that the company "should fly

4

through then."  After Gerald and White climbed into Gerald's car to leave, Rockefeller handed cash to Gerald through his driver's side window.

During a meeting with Rockefeller in early February 2010, Gerald said that he wanted a vehicle, and he gave assurances that he would be a loyal ally.  Gerald boasted that he had instructed White to tell the Sheriff's Office to add Hondrellis to its towing list and that White had told the director of the Transportation Commission to process Hondrellis's application.

At another meeting attended by White, Gerald asked Rockefeller for a used Lincoln Navigator vehicle and Rockefeller responded that he could not purchase the vehicle for Gerald at that time.  Both Gerald and White made veiled remarks to Rockefeller about bribes.  White remarked that he was en route to collect "some, um, campaign contributions," and then Gerald demanded that Rockefeller "give [White] a donation for his campaign too" in "cash," not with "a check" because "[t]he most" Gerald could give was "500."  As time passed, Gerald persisted in his requests for the Navigator vehicle from Rockefeller, and Gerald complained to Rockefeller about being unable to afford the vehicle.  Rockefeller stated that the cost of the vehicle did not matter if he got on the towing list and that he needed Gerald's help.

Eventually, Rockefeller gave the vehicle to Gerald.  In March, Gerald complained about not having the title to the Navigator vehicle, and Rockefeller

agreed to provide Gerald title to the vehicle subject to an $8,000 lien that Rockefeller would discharge after their "deal work[ed]."

On March 19, 2010, Rockefeller told Gerald that he wanted to form a towing company, and Gerald assured Rockefeller that he would be placed on an agency towing list if he gave White "a little envelope." Rockefeller gave Gerald an envelope containing $1,000, and after White joined the meeting, the three men discussed Rockefeller's new company, Tri-County Auto Towing. White stated that, when Rockefeller submitted his application, it would be placed on the agenda for approval by the Transportation Commission. White also offered to call Lieutenant Margaret Hauser in the Sheriff's Office to inquire about openings on its towing list. White stated that he could not make the Sheriff's Office select Tri-County, but he would get the application approved if that agency added two companies to its towing list.

On April 22, 2010, Rockefeller met with White and a mutual acquaintance, Bob Vallee, who suggested that White meet Darryl Williams, an undercover agent of the Bureau. White stated that he did not want to meet anyone new unless they were going to help him, and when told about White's statement, Williams offered to bring $1,000 for White. On April 29, 2010, White met with Williams, who represented that he was bankrolling Tri-County. White said that the Transportation Committee would approve the Tri-County application and that he would try to

6

have the company added to the towing list for the Sheriff's Office, but he did not need any new friends unless they were helping him.

Williams gave a "contribution" of $1,000 to White and explained that the money was donated "selfish[ly]" to help himself and Rockefeller. White called Rockefeller to ask the name of his company, and then White called Williams to tell him that "it" was on the "consent agenda" to be approved by motion instead of having to undergo the usual discussion process. On May 14, 2010, White told Williams that the Tri-County application had been placed at the top of the agenda and approved quickly at the meeting of the Transportation Commission.

On May 28, 2010, Williams asked White what "contribution" was required to get another application approved, and White replied he needed to raise $10,000 in the next two weeks. On June 4, 2010, White and Williams met for lunch. Williams mentioned that Rockefeller had a problem with zoning, and White called "Steve" and left a voice message asking him to handle a zoning issue. Williams thanked White for his assistance and gave White $5,000 "to hold [him] over," after which White said that he would continue to help Williams.

White urged the Sheriff's Office to add Tri-County to the agency towing list. Rockefeller complained to White that the Sheriff had said that there were no openings on his towing list, and White responded that he would try to fix the issue. Williams also met with White, who avowed that he had tried to get Tri-County on

7

the towing list by telling a lieutenant in the Sheriff's Office to "make this one work." White said that if the lieutenant did not call him, he would call the Sheriff.

A grand jury returned a ten-count indictment against White. White was charged for one count of conspiracy to commit bribery, 18 U.S.C. § 371; one count of conspiracy to commit mail and wire fraud, id. § 1349; one count of honest services mail fraud, id. §§ 1341, 1346, 2, two counts of honest services wire fraud, id. §§ 1343, 1346, 2; and one count of making a false statement, id. § 1001. White also was charged for four counts of bribery when, as an "agent of county government" who "intend[ed] to be influenced and rewarded in connection with any business . . . of such government and agency," he "corruptly solicit[ed] and demand[ed] . . . and "accept[ed] and agree[d] to accept" $1,000 on January 7, 2010; $1,000 on March 19, 2010; $1,000 on April 29, 2010; and $5,000 on June 4, 2010. Id. §§ 666, 2.

During White's trial, the government introduced evidence about the fiscal and logistical operations of the County and Transportation Commission, White's role in the County, and his misdeeds. The County Administrator, Michael Merrill, and the Executive Director of the Transportation Commission, Cesar Padilla, testified about the budgets of the County and the Commission and White's role in the County government. Agent Deven Williams, who was Rockefeller's contact at the Bureau, identified the agenda used by Transportation Committee on the date

8

that it approved the Tri-County application; authenticated the numerous audio recordings made by Rockefeller and Darryl Williams of their conversations with Hondrellis, White, and Gerald; and testified about giving Darryl Williams $1,000 on April 29, 2010, and $5,000 on June 4, 2010.  Darryl Williams testified that he gave the cash to White to have Tri-County added to the towing list for the Sheriff's Office.  Rockefeller testified about the numerous conversations that he had with White, Gerald, and Hondrellis; his agreement with Gerald to forego monthly payments of $500 on the Navigator vehicle if Tri-County was added to the towing list for the Sheriff's Office; and the opportunity for a towing company to make more than $100,000 working for a County agency as evidenced by his experience in 2006, when he earned $132,152 towing for the Tampa Police Department.

The government also called Lieutenant Hauser and her supervisor, Colonel Greg Brown, to testify about telephone calls they received from White in June 2010.  Hauser said that White asked her to add Tri-County to the towing list for the Sheriff's Office, and then he insisted on speaking to Brown after learning that an open position on the towing list had already been filled.  White next called Brown; identified himself as being "in charge of the Public Transportation Commission"; said that the agency had certified a towing company and misrepresented that it would be added to the towing list for the Sheriff's Office; and asked Brown to add the company to the towing list.  Brown refused, but White called a second time and

9

made the same request.  Brown opined that White was "using his position to try to force [Brown] to put someone [arbitrarily] on the rotation service."  Brown testified that the Sheriff's Office relies on the County Commission to provide operating revenues and that his agency selects towing companies for its rotational list through a "bid process" that is "opened up . . . to everybody that's certified."

The government rested its case, and White moved for a judgment of acquittal on the ground that the government had failed to prove an element of his bribery charges.  White argued that he had acted as an agent for the Transportation Commission and there was no evidence that agency had received more than $10,000 in benefits from the federal government, as required under section 666.  See 18 U.S.C. § 666(a)(1)(B), (b).  The government responded that White had been an agent of the County as its elected County Commissioner and its delegate to the Transportation Commission, and that the County had received more than $10,000 in federal funds.

The district court denied White's motion for a judgment of acquittal.  The district court likened the case to United States v. Moeller, 987 F.2d 1134 (5th Cir. 1993), where employees of the Texas Federal Inspection Service prosecuted for violating section 666 were held to be agents of the Texas Department of Agriculture by enforcing its regulations.  Id. at 1137–38.  The district court ruled that there was sufficient evidence to establish that White had been an agent of, and

had been influenced in connection with the business of, the County to have towing companies certified and to ensure that the Sheriff's Office used towing companies that had been certified lawfully.

During a conference about jury instructions, White moved for modification of the instruction on bribery submitted by the government. White requested that the district court eliminate from the jury instruction all references to the Transportation Commission because there was no evidence that entity had received federal funds. The district court granted White's motion, and later the district court instructed the jury that it could convict White of bribery, in relevant part, if he "was an agent of Hillsborough County" and if he "intended to be influenced and rewarded in connection with any business . . . of Hillsborough County."

The jury found White guilty of seven crimes: one count of conspiracy to commit bribery, 18 U.S.C. § 371; two counts of bribery, id. §§ 666, 2; one count of conspiracy to commit mail and wire fraud, id. § 1349; two counts of honest services wire fraud, id. §§ 1343, 1346, 2; and one count of making a false statement, id. § 1001. The jury found that White committed bribery by accepting $1,000 on April 29, 2010, and $5,000 on June 4, 2010.

White's presentence investigation report grouped his convictions and assigned a base offense level of 14. See U.S.S.G. § 2C1.1(a)(1). The report increased White's base offense level by four levels because he received bribes of

$8,000 in cash and a Lincoln Navigator vehicle with a value of $13,000, see id.
§§ 2C1.1(b)(2), 2B1.1(b)(1)(C), and an additional four levels because White was
an "elected public official," see id. § 2C1.1(b)(3).  With a total offense level of 22
and a criminal history of I, the report provided an advisory guidelines range
between 41 and 51 months of imprisonment.

White objected to both enhancements.  White argued that the district court
should exclude the value of the Navigator vehicle from the amount of bribes on the
ground that Gerald had acquired the vehicle in a legitimate financial arrangement
with Rockefeller and had made payments on the loan.  Although White
acknowledged that he was an elected official, he argued that the enhancement for
an elected position did not apply because the Sentencing Guidelines required that
he also make decisions for the Transportation Commission or exercise substantial
influence over its decision-making process, and he had done neither.

The district court overruled White's objections and adopted the advisory
guideline range provided in the presentence report.  The district court considered
the statutory sentencing factors, see 18 U.S.C. § 3553(a), and decided to vary
downward five months from the low end of White's sentencing range to impose a
sentence of 36 months of imprisonment.

## II. STANDARDS OF REVIEW

We review <u>de novo</u> the sufficiency of the evidence, and we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in favor of the jury verdicts. <u>United States v. McNair</u>, 605 F.3d 1152, 1195 n.54 (11th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1599, 131 S. Ct. 1600 (2011). We review <u>de novo</u> the interpretation of the Sentencing Guidelines, and we review related findings of fact for clear error. <u>United States v. Huff</u>, 609 F.3d 1240, 1245 (11th Cir. 2010).

## III. DISCUSSION

White challenges his convictions and sentence on four grounds. First, White argues that the government produced insufficient evidence to support his convictions for bribery and conspiracy to bribe. Second, White argues summarily for vacatur of his convictions for mail and wire fraud. Third, White argues that the Navigator vehicle should have been excluded from the amount of bribes received by him. Fourth, White argues that he was not subject to the enhancement for being an elected official. White's arguments fail. We address each in turn.

*A. Sufficient Evidence Supports White's Convictions for Accepting Bribes and Conspiring to Bribe an Official.*

White challenges his convictions for bribery offenses involving programs receiving federal funds. See 18 U.S.C. § 666(a)(1)(B). White argues that the government failed to prove that he acted as an agent of Hillsborough County or

that he accepted bribes to be influenced in connection with its business.  White contends that he acted as an agent of the Transportation Commission, which was autonomous of the County and did not receive any federal funding.  We conclude that sufficient evidence supports White's convictions.

To determine whether an official is an agent of a particular governmental entity, we examine whether the official is "authorized to act on behalf of" that entity.  See United States v. Langston, 590 F.3d 1226, 1234 (11th Cir. 2009) (quoting the definition for "agent" provided in 18 U.S.C. § 666(d)(1)).  In Langston, we agreed with the Fifth and Tenth Circuits that the focus of our inquiry should be on the role that the official plays with respect to the agency.  Id. at 1233 (discussing Moeller, 987 F.2d at 1138, and United States v. Pretty, 98 F.3d 1213, 1219 (10th Cir. 1996)).  The role of an official is best determined by examining his functions, which can be ascertained from a number of sources, including the relationship between the official and the agency and the scope of the official's authority.  See id. at 1234–35.

The government presented sufficient evidence to support the finding of the jury that White acted as an agent of Hillsborough County.  The jury reasonably could have found that White was an agent of the County when trying to have Tri-County added to the towing list for the Sheriff's Office.  See 18 U.S.C. § 666(d)(1).  The evidence proved that Rockefeller and Darryl Williams paid

White to exert his influence as a County Commissioner, who had a vote in the allocation of County funds to the Sheriff's Office, to pressure the Sheriff's Office to select Tri-County. See United States v. Keen, 676 F.3d 981, 994 (11th Cir. 2012) ("[T]o qualify as an agent of an entity, an individual need only be authorized to act on behalf of that entity."). The jury also could reasonably have found that White was an agent of the County when he affected the vote of the Transportation Commission on the Tri-County application. Undisputed evidence established that White was appointed to the Transportation Commission because he was a County Commissioner and that White's role was that of a delegate "act[ing] on . . . behalf" of the County on the Transportation Commission. See 18 U.S.C. § 666(d)(1). Although the Transportation Commission operated autonomously, White did not do so. The evidence established that White was fulfilling one of his obligations to the County by serving on the Transportation Commission, and his service on that entity was inseverable from his function as a County Commissioner.

The government also introduced sufficient evidence from which the jury could find that White accepted bribes intending to be influenced in connection with the business of Hillsborough County. See id. § 666(a)(1)(B). Testimony and audio recordings established that the Sheriff's Office followed a specific procedure for filling open positions on its towing rotation list and that White tried to pressure the Sheriff's Office to add Tri-County to its towing list. From this evidence, the

15

jury reasonably could have found that White accepted bribes intending to interfere with the business of the County to ensure its agencies could impartially select which certified towing companies to use when White pressured the Sheriff's Office to forgo its usual procedures and select Tri-County. See Keen, 676 F.3d at 994 (affirming the convictions of two county commissioners for bribery concerning programs receiving federal funds when they accepted bribes to influence their votes on a zoning matter).

Ample evidence supports White's convictions for bribery and conspiracy to bribe. The government presented testimony, audio recordings, and documents proving that White, an agent of Hillsborough County, interfered with its business when he sought to have Tri-County added to the towing list for the Sheriff's Office. See 18 U.S.C. § 666(a)(1)(B), (d)(1). White does not dispute that the County received federal funds in excess of $10,000; the value of a position on the towing list for the Sheriff's Office was worth more than $5,000; and he corruptly solicited and accepted bribes of $1,000 on April 29, 2010, and $5,000 on June 4, 2010. See id. § 666(a)(1)(B), (b). White also does not dispute that he accepted bribes for his part in a conspiracy between himself, Gerald, and Hondrellis, which they thought also included Rockefeller and Darryl Williams, to form Tri-County, to have that company certified, and to have the company added to the towing list for the Sheriff's Office. See id. §§ 666(a)(1)(B), 2; McNair, 605 F.3d at 1198–99.

16

"We will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McNair, 605 F.3d at 1195 n.54 (internal quotation marks and citation omitted). A rational juror could have found that White was guilty of bribery and conspiring to bribe an official.

*B. White Abandoned His Challenge to His Convictions for Fraud Offenses.*

White has abandoned any challenge he might have made to his convictions for conspiring to commit mail and wire fraud, honest services mail fraud, and honest services wire fraud by failing to provide any argument related to those convictions in his brief. White does nothing more than allude to his fraud convictions in his summary of the argument, where he asserts that "the district court abused its discretion in denying the motion for judgment of acquittal regarding all other counts," and in his conclusion, where he contends that "with the exception of the false statement conviction, all other convictions . . . should be vacated." White makes the conclusory argument on page 24 of his brief that "the interests of justice dictate[] a new trial should have been ordered with regard to all counts of conviction except the false statement charge," but he fails to discuss the matter further. White also mentions his convictions for fraud on page 23 of his brief, but White's argument pertains only to the validity of his bribery convictions. Because White fails to make any substantive argument about his convictions for

fraud, we deem his challenge to those convictions abandoned. See United States v. Woods, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012).

### C. The District Court Did Not Clearly Err By Including the Value of the Lincoln Navigator Vehicle In the Amount of Bribes Received by White.

White argues that the district court clearly erred when it added to his amount of bribes the value of the Navigator vehicle given to his father. White argues that he accepted payments of $8,000 and should have received a two-level enhancement of his sentence, instead of the four-level enhancement imposed for receiving bribes in excess of $10,000. See U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(C). White contends that the vehicle is not attributable to him because he did not know that the vehicle was a bribe and because Gerald obtained the vehicle legitimately in an arms-length transaction with Rockefeller.

The district court did not clearly err by including the value of the Navigator vehicle in the bribes received by White. A defendant is subject to an increase in his offense level based on the value of "anything obtained or to be obtained by a public official or others acting with a public official," see id. § 2C1.1(b)(2), and the conversations involving Gerald and White established that they were acting collaboratively. White argues that Gerald received the vehicle using a "legitimate financing arrangement," but the evidence established that Rockefeller gave the Navigator vehicle to Gerald with the understanding that Tri-County would be added to the towing list for the Sheriff's Office. The district court can hold a

18

defendant accountable for the value of anything that he accepted, see id. § 2C1.1(b)(2); that he "knew or, under the circumstances, reasonably should have known, [would be received] []as a potential result of [his] offense," id. § 2B1.1 cmt. n.3(A)(iv); and that was obtained through the reasonably forseeable acts of his coconspirators, id. § 1B1.3(a)(1)(B). See Huff, 609 F.3d at 1246 (holding that a defendant is responsible for the bribes he accepts and those obtained by his codefendants). Based on the relationship between Gerald and White, their acceptance of other bribes, and White's presence at the meeting where Gerald requested the vehicle and Rockefeller replied that he could not yet afford to buy the vehicle for Gerald, the district court was entitled to find that White knew or reasonably should have known that Gerald obtained the vehicle in exchange for giving Rockefeller access to and assistance from White to have the Tri-County application approved and to have Tri-County added to the towing list for the Sheriff's Office. See U.S.S.G. §§ 2C1.1(b)(2), 2B1.1 cmt. n.3(a)(iv), 1B1.3(a)(1)(B). White fails to mention any evidence that leaves us "with a definite and firm conviction" that the district court was mistaken in holding him responsible for the Navigator vehicle and including its value in the amount of bribes that White received. See United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010) (internal quotation marks and citation omitted). Because White

19

received more than $10,000 in bribes, he was subject to a four-level enhancement of his sentence. See U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(C).

### D. The District Court Did Not Err By Enhancing White's Sentence For His Involvement as an Elected Official.

The district court correctly increased White's base offense level by four levels for his involvement as an elected official. A district court is required to impose a four-level enhancement when "the offense involved an elected public official or any public official in a high-level decision-making or sensitive position." Id. § 2C1.1(b)(3). White acknowledges that he is an elected official, but he contends that he also must have, but did not, make decisions for, or exercise substantial influence over decisions made by, the County Commission or the Transportation Commission. But White's argument fails because the "use of a disjunctive . . . [in section 2C1.1(b)(3)] indicates that alternatives were intended." United States v. Garcia, 718 F.2d 1528, 1532–33 (11th Cir. 1983). "Being a bribe-taking 'elected public official' is different from being a run-of-the-mill, bribe-taking, non-elected 'public official,'" United States v. White, 663 F.3d 1207, 1217 (11th Cir. 2011), who must exercise some level of authority to be subject to the four-level enhancement of his sentence. The district court did not err.

## IV. CONCLUSION

We **AFFIRM** White's convictions and sentence.