14-1397-cr (L)
*United States of America v. Mark Mazer*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 30th day of November, two thousand fifteen.

Present:
   ROBERT A. KATZMANN,
    *Chief Judge*,
   DENNY CHIN,
    *Circuit Judge*,
   P. KEVIN CASTEL,
    *District Judge*.

_____

UNITED STATES OF AMERICA,

   *Appellee*,

    v.             No. 14-1397-cr (L),
                    14-1399-cr (Con),
SVETLANA MAZER, LARISA MEDZON, ANNA   14-1404-cr (Con)
MAKOVETSKAYA, CARL BELL, PADMA ALLEN,
REDDY ALLEN, TECHNODYNE LLC, SCIENCE
APPLICATIONS INTERNATIONAL CORPORATION,

   *Defendants*,

1

MARK MAZER, DIMITRY ARONSHTEIN,
GERARD DENAULT,

     *Defendants-Appellants*.

_____

For Appellee:                HOWARD S. MASTER, Assistant United States Attorney (Andrew D. Goldstein, Brian A. Jacobs, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

For Defendant-Appellant Mark Mazer:    HENRY E. MAZUREK, Clayman & Rosenberg LLP, New York, New York.

For Defendant-Appellant Dimitry
Aronshtein:                 SUSAN C. WOLFE, Blank Rome LLP, New York, New York (Marc Fernich, Jonathan Savella, Law Office of Marc Fernich, New York, New York, *on the brief*).

For Defendant-Appellant Gerard
Denault:                   BARRY A. BOHRER (Gary Stein, Michael L. Yaeger, Andrew D. Gladstein, *on the brief*), Schulte Roth & Zabel LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Daniels, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants Mark Mazer, Dimitry Aronshtein, and Gerard Denault appeal from a judgment entered on April 29, 2014, by the United States District Court for the Southern District of New York (Daniels, *J.*) following a jury trial that resulted in the following convictions: all three defendants were found guilty of conspiring to violate the Travel Act, 18 U.S.C. § 1952, in violation of 18 U.S.C. § 371 and of conspiring to commit money laundering in violation of 18

2

U.S.C. § 1956(h); Mazer was found guilty of wire fraud and conspiring to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 and of receiving bribes and conspiring to commit federal programs bribery in violation of 18 U.S.C. §§ 371 and 666; Aronshtein was found guilty of paying bribes and conspiring to commit federal programs bribery in violation of 18 U.S.C. §§ 371 and 666; and Denault was found guilty of wire fraud and conspiring to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 and of honest services fraud and conspiring to commit honest services wire fraud in violation of 18 U.S.C. §§ 1346 and 1349. The evidence at trial showed that defendants exploited their positions as managers and contractors on CityTime, a project of the City of New York designed to update the City's payroll systems, in order to profit from a long-running scheme against the City that involved fraud, kickbacks, and money laundering. On appeal, defendants raise a host of issues challenging, in one way or another, nearly every aspect of the judgment below. We assume the parties' familiarity with the relevant facts and the procedural history of the case.

## I. Motion to Suppress

Aronshtein argues that the district court erred in denying his motion to suppress evidence obtained from his home pursuant to a search warrant that, according to Aronshtein, was overbroad and insufficiently particular in violation of the Fourth Amendment. "On appeal from a district court's ruling on a motion to suppress evidence, 'we review legal conclusions de novo and findings of fact for clear error.'" *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (quoting *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013)).

We need not resolve whether the warrant complied with the Fourth Amendment because, even if it did not, the good-faith exception to the exclusionary rule applies. *See generally United*

*States v. Leon*, 468 U.S. 897, 922 (1984). Aronshtein does not contend that the magistrate judge was misled or "wholly abandoned his judicial role" in issuing the warrant or that the application for the warrant was devoid of any "indicia of probable cause." *Id.* at 923. Thus, we will not apply the exclusionary rule unless the warrant at issue was "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.*

Here, the nature of the crimes under investigation demonstrates that the officers' reliance on the warrant was objectively reasonable. Courts routinely afford officers greater latitude in detailing the items to be searched when, as here, the criminal activity under investigation involves "complex financial transactions." *See, e.g.*, *United States v. Yusuf*, 461 F.3d 374, 395-96 (3d Cir. 2006). In light of this background rule, even if the warrant at issue may have been less detailed than is typical, the officers did not act unreasonably in executing it. Accordingly, we affirm the district court's denial of Aronshtein's motion to suppress.

## II. Sufficiency of the Evidence

Defendants also challenge the sufficiency of the evidence underlying the wire fraud, federal programs bribery, and Travel Act convictions. "We review *de novo* a challenge to sufficiency of the evidence," viewing "the evidence presented at trial 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.'" *United States v. Naiman*, 211 F.3d 40, 46 (2d Cir. 2000) (quoting *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999)). "We will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Burns*, 104 F.3d 529, 534 (2d Cir. 1997)).

4

A.  *Wire Fraud Convictions*

A conviction under the wire fraud statute requires proof of fraudulent intent.  *United States v. Autuori*, 212 F.3d 105, 116 (2d Cir. 2000).  This "[i]ntent may be proven through circumstantial evidence, including by showing that [the] defendant made misrepresentations to the victim(s) with knowledge that the statements were false."  *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).  To ensure that the requisite fraudulent intent exists, however, "we have repeatedly rejected application of the mail and wire fraud statutes where," notwithstanding the existence of "'[m]isrepresentations amounting . . . to a deceit,'" "the purported victim received the full economic benefit of its bargain."  *United States v. Binday*, --- F.3d --- , 2015 WL 6444932, at *6, *13 (2d Cir. Oct. 26, 2015) (quoting *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)).  As a result, "[o]ur cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes."  *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007).  Mazer and Denault argue that the City received precisely what it bargained for and that their cases therefore fall into the former category.

We disagree.  For instance, the jury heard evidence that Mazer, in his role as a manager of the CityTime project, signed a series of timesheets that authorized payments for consultants for hours never worked.  Although Mazer now tries to characterize those payments as nothing but an informal severance package, the jury rejected that argument.  And for good reason, as it heard testimony that Mazer had no authorization to provide such severance and that, when City

officials learned of the payments, they ordered them stopped.  Denault, for his part, directed a

subordinate to issue a letter to the City that described Technodyne, a subcontractor, as a firm

possessing "unique combinations of technical capability and key personnel."  As a result, the

City consented to Science Applications International Corporation ("SAIC") renewing

Technodyne's contract without rebidding it, a process that, in all likelihood, would have resulted

in lower subcontracting prices.  The jury heard testimony, however, that, notwithstanding the

representation in the letter, Technodyne's capabilities were actually run of the mill.  In each

instance, therefore, the City agreed to pay for one thing—two weeks of hours worked and a

uniquely capable subcontractor—but received another—no hours worked and an average, but

high-priced, subcontractor.  In light of this and other evidence presented at trial, we conclude that

there was sufficient evidence that the City did not receive the benefit of its bargain and,

accordingly, that defendants have not met their "heavy burden" of establishing that no rational

juror "'could have found the essential elements of the crime beyond a reasonable doubt.'"

*United States v. Chavez*, 549 F.3d 119, 124-25 (2d Cir. 2008) (quoting *Jackson v. Virginia*, 443

U.S. 307, 319 (1979)).

B.  *Federal Programs Bribery Convictions*

In pertinent part, 18 U.S.C. § 666 makes it unlawful to "corruptly" give anything of value

to an "agent of an organization, or of a State, local, or Indian tribal government, or any agency

thereof" or for such an agent to "corruptly" accept anything of value where the relevant

organization or government entity receives federal "benefits in excess of $10,000."  18 U.S.C.

§ 666(a)(1)(B), (a)(2), (b).  At trial, the Government introduced evidence to show that the City

received more than $10,000 in federal assistance and that Mazer was acting as a City agent when

6

he "corruptly" accepted, and Aronshtein "corruptly" paid, bribes. Mazer and Aronshtein now challenge the sufficiency of the evidence supporting the jury's determination that Mazer was an agent of the City. Aronshtein additionally challenges the sufficiency of the evidence establishing that he had knowledge of Mazer's status as an agent of the City.

Neither argument persuades us. First, the evidence was more than sufficient for the jury to find that Mazer was an agent of the City. 18 U.S.C. § 666(d)(1) defines an "agent" as, among other things, "a person authorized to act on behalf of another person or a government," and the evidence amply supports the jury's determination that Mazer had authority to act on behalf of the City. Contrary to defendants' arguments, the mere fact that Mazer was hired to work on the CityTime project by the City's Office of Payroll Administration ("OPA") does not mean that he lacked authority to act on behalf of the City. CityTime was not an OPA-specific project, but a City-wide one, initiated to update the payroll system of 80 City agencies and accounted for in the City's capital budget. Consistent with this, the CityTime contract and each amendment thereto was entered into "by . . . the City of New York, *acting through* its Office of Payroll Administration." *E.g.*, App. 1088 (emphasis added); *see United States v. Moeller*, 987 F.2d 1134, 1137-38 (5th Cir. 1993) (holding that employees of the Texas Federal Inspection Service were agents of the Texas Department of Agriculture, in part, because "TFIS performed discretionary functions on behalf of TDA"). Further, the evidence was clear that Mazer *personally* had authority to act on behalf of and bind the City in connection with his work on CityTime.

Second, we also reject Aronshtein's contention that the jury lacked a sufficient basis to find that he had knowledge of Mazer's status as an agent of the City. The Government

introduced evidence at trial showing that Aronshtein knew of Mazer's role in the hiring process for CityTime, and Aronshtein testified on direct examination that Mazer had described his work as involving a "project *for the city*." Trial Tr. 4556:3-4 (emphasis added).

C. *Travel Act Conspiracy Conviction*

Both Mazer and Aronshtein challenge the sufficiency of the evidence supporting their convictions for conspiring to violate the Travel Act. We begin with Mazer's appeal. The Travel Act prohibits the use of interstate wires to distribute the proceeds of unlawful activity or to further that activity. *See* 18 U.S.C. § 1952(a). The unlawful activity charged here was bribery under New York law, which requires that the person receiving a bribe do so "without the consent of his employer or principal." *See* N.Y. Penal Law § 180.05. Mazer contends that the testimony of Elaine Doria, OPA's administrative director, establishes that OPA had knowledge that Mazer received "fees" from D.A. Solutions, Aronshtein's company and the source of some of the bribe money. Even if we were to accept Mazer's characterization of the evidence, we would have no reason to reverse his conviction. Mazer's theory on appeal ignores the significant difference between "knowledge," which he claims Doria had, and "consent," which the statute requires. Accordingly, we reject Mazer's challenge to the sufficiency of the evidence supporting his conviction for conspiring to violate the Travel Act.

We likewise reject Aronshtein's challenge. The object of the Travel Act conspiracy charged was the overarching scheme that involved kickbacks to Mazer and Denault paid by, among others, Aronshtein and Prime View's principal, Victor Natanzon. Aronshtein contends that the Government failed to prove that he entered into anything more than an agreement to send money to Mazer (for, according to Aronshtein, legitimate purposes) and that the evidence failed

8

to show he was aware that Natanzon was paying kickbacks to Mazer or that Denault was receiving kickbacks. A review of the record, however, demonstrates that there was ample evidence from which the jury could infer that Aronshtein knowingly entered the larger conspiracy, and that is all that is required. *See United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979) ("To be convicted as a member of a conspiracy, a defendant need not know every objective of the conspiracy, every detail of its operation or means employed to achieve the agreed-upon criminal objective, or even the identity of every co-conspirator." (citations omitted)).

### III. The Jury Instructions

"A defendant challenging a jury instruction as erroneous must show 'both error and ensuing prejudice.'" *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (quoting *United States v. Quinones*, 511 F.3d 289, 313-14 (2d Cir. 2007)). We will find error "if we conclude that a charge either fails to adequately inform the jury of the law, or misleads the jury as to a correct legal standard." *United States v. Doyle*, 130 F.3d 523, 535 (2d Cir. 1997).

#### A. *Federal Programs Bribery Instructions*

Mazer argues that the district court erred in not including in its charge Mazer's proposed defense instruction that he "contends he was not an agent of the City because he was not authorized to act on behalf of the City." App. 1772. "While a defendant is entitled to any legally accurate jury instruction for which there is a foundation in the evidence, he does not have a right to dictate the precise language of the instruction." *United States v. Banki*, 685 F.3d 99, 105 (2d Cir. 2012). Here, the district court instructed the jury that Mazer "contends that, with regard to the bribery charge, he was not an agent of the city," Trial Tr. 5337:17-18, and that "[a]n 'agent'

9

is a person authorized to act on behalf of another person, organization, or government," *id.* 5352:9-10. "[W]e examine the charge[] as a whole," *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006), and together, these two instructions satisfied the district court's obligation to include Mazer's defense theory.

B.  *Travel Act Conspiracy Instructions*

We likewise reject Mazer's objection to the district court's instruction on the charge of conspiracy to violate the Travel Act. According to Mazer, the district court erred in not clarifying that, unlike federal programs bribery under 18 U.S.C. § 666, for which proof of an unlawful gratuity is sufficient, bribery under New York law (the predicate "unlawful activity" for the Travel Act charge) requires proof of a *quid pro quo*. Mazer did not raise this objection below, and we therefore review only for plain error.

We conclude that, even if the instructions were flawed, Mazer has failed to carry his burden to establish prejudice. *See United States v. Olano*, 507 U.S. 725, 734 (1993). In an attempt to show prejudice, Mazer argues that he "presented evidence at trial that his interests in [D.A. Solutions] and Prime View were more akin to joint ventures than the result of any *quid pro quo* agreement." Mazer Br. 86. But this defense theory, if accepted, would have resulted in an acquittal on the federal programs bribery charges—whether grounded in a *quid pro quo* or a gratuity theory—as well, and the jury necessarily rejected Mazer's theory (and related interpretation of this evidence) when it convicted him of those charges. We see no reason why a different jury instruction would have led the jury to accept the joint-venture defense only with respect to the Travel Act conspiracy charge, and so we find that the district court's error, if any, was harmless.

10

C. *Honest Services Fraud Instructions*

Denault's challenge to the district court's instructions for the honest services fraud charges is also unpersuasive. The Government stated in its rebuttal summation that a *quid pro quo* exists when a person "takes any favorable action or provides any benefit to the payor . . . in exchange for the payments." Trial Tr. 5250:14-17. Denault argues that a supplemental instruction was needed to correct the Government's "erroneous implication that an action taken in furtherance of undisclosed self-dealing constitutes the requisite *quid pro quo* under the honest services fraud statute." Denault Br. 76. We do not accept the premise of Denault's argument, that is, that the Government made any improper suggestion. The Government was correct that the defining feature of a *quid pro quo* is the existence of an "exchange." *See United States v. Bahel*, 662 F.3d 610, 635 (2d Cir. 2011).

## IV. Evidentiary Objections

Denault also appeals the district court's decision to admit into evidence a summary chart created by the Government and to exclude testimony from Denault's sole defense witness. We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000).

A. *The Summary Chart*

The summary chart reflected the markups that various contractors, subcontractors, and sub-subcontractors charged the City on a $2.5 million invoice issued to the City. Denault argues that the chart should have been excluded under Federal of Evidence Rule 403 as substantially more prejudicial than probative primarily because, according to Denault, the extent of the

11

markups was not relevant to City's bargain. In other words, Denault contends that the markups were not probative of *anything* relevant to the trial.

We cannot agree. Whatever the relevancy of the precise extent of the markups to the City, it is common sense that the overall price factored into the City's bargain, and the extent of the markups shows that the pricing was abnormally high for the services rendered. Relatedly, the summary chart was probative of Mazer's and Denault's motives for lobbying for Amendment 6 and Work Order 67—which, together, set the pricing structure on CityTime after 2006— because the extent of the markups (1) demonstrates how the kickbacks, which were a cut of the subcontractor's and sub-subcontractors' earnings, were funded and (2) helps explain why Mazer in particular endeavored to keep the scheme going, as his kickback was a percentage of the sub-subcontractors' profits, not a flat fee, such that the greater the markup, the greater the kickback. Accordingly, we find that the district court did not abuse its discretion in admitting the summary chart.

### B. *Exclusion of Defense Witness*

After the close of the Government's case, Denault sought to introduce testimony from his former lawyer, Raymond Lubus. According to Denault's counsel's proffer, Lubus would have testified about a 2003 conversation in which Denault allegedly (1) stated that he was in a partnership to provide staffing services on CityTime with a fellow SAIC employee and Reddy Allen, an owner of Technodyne (one of the subcontractors that the jury found paid Denault kickbacks) and (2) inquired into the legality of receiving "money pursuant to an hourly formula" as part of this partnership. Denault Special App. 28. The district court excluded the testimony as inadmissible hearsay.

12

Denault argues that Lubus's testimony as to Denault's statements was admissible under Federal Rule of Evidence 803(3) as "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan)" and that Lubus's testimony as to his own statements was admissible non-hearsay. To the former, Denault's attempt to shoehorn Lubus's testimony into the state of mind exception is betrayed by his own briefing, which demonstrates that Denault sought Lubus's testimony not to prove any belief then held by Denault, but to establish his alleged ownership interest in Technodyne in order to show he engaged only in self-dealing. *See, e.g.*, Denault Br. 71 ("If Lubus had been permitted to testify, the jury would have heard a plausible non-criminal basis for Denault's conduct: his pre-existing partnership interest in Technodyne."); *see also Skilling v. United States*, 561 U.S. 358, 409 (2010). This puts Lubus's testimony squarely within the "exception to the exception" contained in Rule 803(3), which excludes "a statement of memory or belief [offered] to prove the fact remembered or believed." *See generally United States v. Ledford*, 443 F.3d 702, 709 (10th Cir. 2005). To Denault's latter argument—that Lubus's testimony could have been admitted as non-hearsay for its effect on Denault—we conclude that the exclusion of Lubus's testimony for that purpose was harmless. Denault claims that Lubus's opinion that Denault's receipt of an hourly fee was not criminal would have allowed the jury to conclude that Denault only wired money through India to avoid detection from his employer, SAIC. Simply put, we fail to see, and Denault has not explained, why SAIC would have had access to or would have been monitoring his bank records. We therefore reject Denault's claim that Lubus's testimony could have persuaded the jury that Denault's decision to route the money through India lacked any connection to criminal activity. *See United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir. 1992) ("[E]rror is harmless if we can

13

conclude that that testimony was 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991))).

## V. Defendants' Sentences

Defendants each challenge the district court's Guidelines calculations and the sufficiency of the record of the district court's sentencing determination. We find no reversible error in either.

Although nothing in the record below warrants resentencing, we remind the district court that it is best practice to provide a more thorough explanation of the reasons for the sentences imposed and to do so separately for each defendant. *Cf. United States v. Corsey*, 723 F.3d 366, 377 (2d Cir. 2013). Even when, as here, a judge is not *required* to say more, doing so still serves a "salutary purpose." *See Rita v. United States*, 551 U.S. 338, 357 (2007). "Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Id.* at 356. It also benefits the defendant. An individualized and non-cursory explanation ensures the defendant in a multi-defendant case that the district court considered his arguments, which at least partially quells the concern (that would otherwise linger during the defendant's term of incarceration) that his sentence was imposed for the wrong reasons and, in that way, helps to secure his "trust in the judicial institution." Additionally, a more tailored explanation informs the defendant of precisely what it is about his conduct, as distinct from the conduct of his co-defendants, that prompted the sentence, thereby advancing the aims of specific deterrence. In sum, while we have no reason to reverse the district court in this instance, we encourage it to

14

provide more robust and individualized explanations even when our case law does not mandate it.

**VI. Conclusion**

We have considered all of defendants' remaining arguments, and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK